81 Spooner Road LLC *vs.* Town of Brookline.

Suffolk. May 8, 2008. - August 4, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Zoning,* Validity of by-law or ordinance, Interior area of residence, Accessory building or use.

In a civil action challenging the validity, as applied to single-family residences, of the defendant town's zoning bylaw, which employed a maximum floor-to-area ratio to regulate land use in different zones within the town, the Land Court judge properly granted summary judgment in favor of the town, where G. L. c. 40A, § 3, second par., permitted consideration of a residence's interior area in regulating its bulk, as long as the effect of such regulation on a residence's interior area was only incidental [111-117]; further, the definition in the bylaw of "gross floor area" did not amount to an impermissible direct regulation of the interior area of single-family residences, where the exclusion of certain accessory use space from the definition was not a direct regulation of interior area, and where the prohibition of the use of such space was a permissible regulation of uses accessory to residential use [118]; finally, the provision in the bylaw permitting conversion of attic and basement space to habitable space after ten years was not arbitrary or capricious [118-119].

Civil action commenced in the Land Court Department on November 21, 2005.

The case was heard by *Charles W. Trombly,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Jeffrey P. Allen (Eric B. Goldberg* with him) for the plaintiff.

*Jennifer Dopazo,* Town Counsel *(John J. Buchheit,* Assistant Town Counsel, with her) for the defendant.

*Richard W. Benka,* for Moderator's Committee on Zoning of the Town of Brookline, amicus curiae, submitted a brief.

*James Gray Wagner & Thomas J. Urbelis,* for City Solicitors & Town Counsel Association, amicus curiae, submitted a brief.

Spina, J. Section 5.20 of the zoning bylaw of the town of

Brookline (town) employs a maximum floor-to-area ratio (the numerator is the "gross floor area" of a building; the denominator is the area of the lot on which it sits) to regulate land use in different zones within the town. 81 Spooner Road LLC, a developer, challenged this provision of the bylaw in an action filed in the Land Court under G. L. c. 240, § 14A, claiming that the bylaw violates G. L. c. 40A, § 3, second par., which states, in relevant part:

> "No zoning ordinance or by-law shall regulate or restrict the interior area of a single family residential building . . . provided, however, that such . . . structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements. . . ."

On cross motions for summary judgment, a judge in the Land Court concluded that the bylaw did not violate the statute because it regulated the exterior of structures and only incidentally affected the interior area of the single-family home proposed by the developer. He awarded judgment for the town and the developer appealed. The developer filed an application for direct appellate review, which we granted. We now affirm the judgment of the Land Court.[1]

1. *Facts.* The facts are not in dispute. On April 8, 2005, the town's building commissioner issued a building permit authorizing the developer to build a house on a vacant lot on Spooner Road, located in an S-10 zoning district. The zoning bylaw permits single-family homes on lots having a minimum area of 10,000 square feet in an S-10 zoning district. Table 5.01 of the bylaw specifies the uses, the minimum lot area, the maximum floor-to-area ratio,[2] the minimum lot width, the maximum building height, the setback requirements, and the open space requirements for each zoning district in the town. The floor-to-area

---

[1]We acknowledge the amicus briefs filed by the City Solicitors and Town Counsel Association and the Moderator's Committee on Zoning of the Town of Brookline.

[2]Section 5.20 of the bylaw states: "For any building or group of buildings on a lot the ratio of gross floor area to lot area shall not exceed the maximum specified in [Table 5.01]."

ratio applicable to the S-10 zoning district is .3. Neighbors challenged the building permit on several grounds. Relevant to this appeal is the claim that the floor-to-area ratio exceeded the maximum .3 permitted under the bylaw.

The building commissioner declined to rescind the building permit, and the neighbors appealed to the town's zoning board of appeals (board). After a hearing, the board found that the top floor of the house was designed and was intended to be used as habitable space,[3] not as an attic.[4] Because it was habitable space, the board ruled the upper floor area must be included in the gross floor area[5] of the house for purposes of determining the floor-to-area ratio. The board concluded that the gross floor area of the house produced a floor-to-area ratio that exceeded the maximum permitted under the bylaw, and it rescinded the building permit. The developer brought suit in the Land Court challenging the validity of the floor-to-area sections of the bylaw as they apply to single-family homes.

2. *Discussion.* The developer argues that a bylaw may have no effect, incidental or otherwise, on the interior area of a single-family residence without running afoul of G. L. c. 40A, § 3, second par. The statute's prohibition on regulation or restriction of the interior area of such houses, it contends, is "without qualification," or absolute. Alternatively,[6] the developer argues that although the proviso in § 3, second par., authorizes

---

[3]Section 2.08(1) of the bylaw defines "habitable space" as: "Space in a structure for living, sleeping, eating, bathing or cooking or otherwise used for human habitation."

[4]Section 2.01(3) of the bylaw defines an "attic" as: "The [s]pace in a building between the roof framing and the ceiling beams of the rooms below and not considered habitable space."

[5]Section 2.07(1) of the bylaw defines "gross floor area" as:

> "The sum of the areas of the several floors of a building, including areas used for human occupancy in basements, attics, and penthouses, as measured from the exterior faces of the walls. It does not include cellars, unenclosed porches, or attics not used for human occupancy, or any floor space in accessory buildings or in the main building intended and designed for the parking of motor vehicles . . . or any such floor space intended and designed for accessory heating and ventilating equipment. It shall include the horizontal area at each floor level devoted to stairwells and elevator shafts."

[6]We have treated the argument as phrased in the alternative to avoid any confusion.

municipalities to subject single-family residences to "reasonable regulations concerning . . . bulk and height . . . and determining yard sizes, lot area, setbacks, open spaces, parking and building coverage requirements," these are exterior factors related to the density of residential development and other purposes for which zoning was established, including "to lessen congestion in the streets; to conserve health; . . . to prevent overcrowding of land, to avoid undue concentration of population; . . . to conserve the value of land and buildings . . . ; to encourage the most appropriate use of land throughout the city or town," St. 1975, c. 808, § 2A; and the town's bylaw regulating "bulk," with its floor-to-area ratio, impermissibly regulates the interior area of single-family residences by establishing a cap on such space.

The town contends that, in regulating exterior and bulk of houses under the proviso in § 3, second par., municipalities may have an indirect effect on interior area without offending the prohibition against the regulation or restriction of interior area. It argues that the prohibition in the statute applies only to direct regulation of interior area. It further argues that the legislative history of the prohibition against regulating or restricting the interior area of single-family residences indicates an intent only to prohibit a form of "snob" zoning based on minimum floor area.

We begin by examining the scope of the authority granted under the proviso in § 3, second par. The proviso identifies several means of regulating structures used for single-family residences, including bulk, height, setbacks, yard size, open space, parking, and building coverage requirements. Alone or in combination, these devices create a cap on the size of any single-family house that can be built on any lot. That is, with the exception of height regulations, each device prevents construction that would cover all or substantial portions of a lot. In the case of height regulations, the size of a house is restricted by the number of floors that can be built. Because these zoning devices affect the exterior dimensions of a house, they necessarily will affect its interior area. If § 3 prohibits all restriction of the interior area of a residence, as the developer argues, then none of the regulatory devices mentioned in the proviso in § 3, second par., would be

valid, and single-family residences could be constructed to cover an entire lot, with no height restriction. Houses, as well as lots, could abut, wreaking havoc on the purposes of zoning. We do not construe a statute in a manner that renders its purposes ineffective or its words meaningless. *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985).

A statute must be construed "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). The plain language of the proviso in § 3, second par., permits a zoning bylaw to regulate single-family residences through devices that operate against the exterior of such structures, and such regulation necessarily will affect its interior area.

The appearance of the word "bulk" in the proviso in § 3, second par., further supports a determination that the Legislature intended zoning devices permissibly to affect the interior area of single-family residences. Unlike the other devices mentioned in the proviso, which operate against the exterior of a building or structure, a "bulk" regulation operates in a more complex manner involving consideration of interior area. The current version of G. L. c. 40A, "The Zoning Act," was inserted by St. 1975, c. 808, § 3. Section 2A[7] of that legislation contains a legislative statement of the purposes of the zoning act and enumerates ways

---

[7]Statute 1975, c. 808, § 2A, states:

"This act is designed to provide standardized procedures for the administration and promulgation of municipal zoning laws. This section is designed to suggest objectives for which zoning might be established which include, but are not limited to, the following: — to lessen congestion in the streets; to conserve health; . . . to prevent overcrowding of land, to avoid undue concentration of population; to encourage housing for persons of all income levels; . . . to conserve the value of land and buildings, including the conservation of natural resources and the prevention of blight and pollution of the environment; to encourage the most appropriate use of land throughout the city or town . . . . Said regulations may include but are not limited to restricting, prohibiting, permitting or regulating:

"1. uses of land . . .

zoning regulations may operate, including the use of restrictions of both "size" and "bulk" of buildings. Although these two terms are often used synonymously,[8] their appearance in the same statutory series requires us to construe them differently if each is to have meaning. See *Tamulevich* v. *Robie*, 426 Mass. 712, 713-714 (1998); *Commonwealth* v. *O'Keefe*, 48 Mass. App. Ct. 566, 567-569 (2000).

At least one commentator has noted that when "bulk" and "size" are used interchangeably, they refer to width, length, and height, but "bulk may also be expressed in terms of [a building's] gross floor area." 3 A.H. Rathkopf & D.A. Rathkopf, Zoning and Planning § 54:2, at 54-2 (2005). "[T]he bulk of a building may be measured or restricted in terms of the percentage of the lot which it may cover ('maximum lot coverage') multiplied by the number of allowed stories in the building. . . . A more flexible method of regulating bulk is establishing a ratio between the size of the lot and the gross floor area of the principal building to be erected thereon . . . ." *Id.* at 54-2 to 54-3. Before the enactment of the current G. L. c. 40A, we recognized that regulation of a building by its bulk may involve consideration of its interior area. See *Woods* v. *Newton*, 351 Mass. 98, 102 (1966) ("essential scheme" of ordinance is to maintain relation between lot area and building bulk through use of floor-to-area

"2. *size*, height, *bulk*, location and use of structures, including buildings . . .

". . .

"5. areas and dimensions of land . . . to be occupied or unoccupied by uses and structures, courts, yards and open spaces;

"6. density of population and intensity of use;

"7. accessory facilities and uses, such as vehicle parking and loading, landscaping and open space; and

"8. the development of the natural, scenic and aesthetic qualities of the community."

(Emphasis added.)

[8]Webster's Third New Int'l Dictionary 2130 (1993) defines "size" as "physical magnitude, extent, or bulk; the actual, characteristic, normal, or relative proportion of a thing; . . . applies to things having length, width, and depth or height."

ratio). See also *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 198 (1974); *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 297, 299 (1972).

We conclude that regulation of the bulk of a building by considering its internal area, as through the use of a floor-to-area ratio, is a generally recognized and accepted principle of zoning. We further conclude that the Legislature was well aware of this principle when it treated "size" and "bulk" as discrete terms in St. 1975, c. 808, § 2A, part of the legislation that inserted the current zoning enabling act, and intended regulation by bulk to include consideration of internal area. It follows that the proviso of § 3, second par., permits consideration of interior area in bulk regulation.

We must determine next whether the competing goals of § 3, second par., can be harmonized. See *Telesetsky* v. *Wight*, 395 Mass. 868, 872-873 (1985). To the extent that § 3, second par., both prohibits and permits regulation or restriction of the interior area of single-family residences, it is ambiguous. The ambiguity lies in the words "regulate or restrict." Where we are unable to ascertain the intent of the Legislature from the words of a statute, we look to external sources, including the legislative history of the statute, its development, its progression through the Legislature, prior legislation on the same subject, and the history of the times. See *Commonwealth* v. *Welosky*, 276 Mass. 398, 401-402 (1931), cert. denied, 284 U.S. 684 (1932).

The original prohibition against the regulation or restriction of the interior area of single-family residences appeared in the version of G. L. c. 40A in effect from 1954 until 1975, before the current version of c. 40A was enacted. See St. 1954, c. 368, § 2 (inserting former G. L. c. 40A); St. 1975, c. 808, § 3 (inserting current G. L. c. 40A). Statute 1959, c. 607, § 1, amended the prior version of G. L. c. 40A, § 2, by inserting: "no provision of any ordinance or by-law shall be valid which requires the floor area of the living space of a single-family residential building to be greater than [768] square feet." The judge here noted that the purpose of this legislation was to avert the potential for snob zoning, specifically in response to *Lionshead Lake, Inc.* v. *Wayne*, 10 N.J. 165 (1952), appeal dismissed, 344 U.S. 919 (1953), a decision in which the Supreme Court of New Jersey

upheld a bylaw that required single-family homes to have a minimum 768 square feet of floor area. See 3 A.H. Rathkopf & D.A. Rathkopf, Zoning and Planning, *supra* at § 54:13.

The Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act recommended rewriting the 1954 version of G. L. c. 40A, including the minimum floor area requirements. It proposed that a new G. L. c. 40A provide that "[n]o zoning ordinance or by-law shall regulate the minimum interior floor space or floor area for dwellings." 1972 House Doc. No. 5009, at 84. Instead, the Legislature adopted the current version of G. L. c. 40A with § 3, second par., containing a prohibition against all regulation or restriction of interior area, which implicitly includes regulation of maximum interior area. However, there is no indication in the legislative history that the intent of the Legislature was other than what it was in 1959, namely, to avert snob zoning by prohibiting houses of minimum sizes.

The current § 3, second par., like the 1959 amendment to the former § 2, prohibits regulation of minimum interior area, although it does so implicitly. In that respect it does not conflict with the regulatory authority contained in the proviso. To the extent it prohibits regulation of interior area beyond a minimum, including a cap on interior area, it differs from the 1959 amendment and conflicts with the regulatory authority contained in the proviso. As previously discussed, the prohibition in § 3, second par., cannot be absolute because it would deprive the town of all ability to regulate "density of population and intensity of use" created by single-family homes. It would, in effect, strip municipalities of the ability to achieve the purposes of zoning set forth in St. 1975, c. 808, § 2A. Such a result is illogical.

The town argues persuasively that the prohibition in § 3, second par., should be construed to prohibit only "direct" regulation of interior area, and not incidental effects of reasonable dimensional, bulk, and density requirements. At least one commentator agrees with the position, see Healy, Zoning Power and Its Limitations, 1 Massachusetts Zoning Manual § 2.5(d) (Mass. Cont. Legal Educ. 1995 & Supp. 2002), as does the City Solicitors and Town Counsel Association in its amicus brief. Under such an interpretation, dimensional, bulk, and density require-

ments may properly regulate single-family residences so long as they do not set minimum or maximum levels of interior area.

Our appellate decisions have applied this approach to incidental effects of zoning regulations on other uses protected by § 3 and its predecessor provisions. See, e.g., *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 618 (1966) (off-street parking requirement that did not prohibit educational use, held valid). Cf. *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486, 494 (1964) (single-family zoning "virtually nullified" educational use). The term "regulation," in other contexts, has been construed to mean direct regulation, not a prohibition of incidental effects. See *Perini Corp.* v. *Commissioner of Revenue*, 419 Mass. 763, 767, cert. denied, 516 U.S. 822 (1995) (noting first step in analyzing State's action under negative commerce clause ["power . . . to regulate commerce"] is to determine whether law has only "incidental effects" on interstate commerce); *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 547 (1985) (not every regulation that has some incidental effect on defense program is invalid under supremacy clause).

Construing the prohibition in § 3, second par., to mean direct regulation of interior area is sensible. It is based on a sound method of analysis used to resolve similar internal conflicts in other statutes, and it would make § 3, second par., with its proviso a coherent and internally consistent piece of legislation. It permits municipalities to effectuate the legislative purpose of zoning, as set forth in St. 1975, c. 808, § 2A, while simultaneously preserving the legislative policy against snob zoning and another stated purpose of zoning: "to encourage housing for persons of all income levels." *Id.*

For the foregoing reasons, we conclude that the judge properly concluded that regulation of single-family residences pursuant to the authority in the proviso of G. L. c. 40A, § 3, second par., including bulk regulation by floor-to-area ratio, is a proper exercise of the zoning power, provided the effect of such regulation on the interior area of such structures is incidental. Although the town's bylaw requires consideration of gross floor area of single-family residences for purposes of calculating floor-to-area ratio, this is not a prohibited direct regulation of interior area. Its effect is only incidental.

The developer next contends that the definition of "gross floor area" in § 2.07(1) of the bylaw amounts to an impermissible direct regulation of interior area of single-family residences where it expressly excludes "cellars, unenclosed porches, or attics not used for human occupancy, or any floor space in accessory buildings or in the main building intended and designed for the parking of motor vehicles . . . or . . . for accessory heating and ventilating equipment." The simple answer is that the town properly could include such space in the gross floor area for purposes of computing the floor-to-area ratio, but has chosen not to do so as a "bonus" for home owners, not as a restriction. See *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 198 (1974). The express exclusion of attic and cellar space is not a direct regulation of internal area.

Contrary to the developer's assertion, to the extent that the bylaw prohibits *use* of attic space and cellars for habitation, it does not violate § 3, second par. The statute does not prohibit regulation or restriction of *use* of single-family residences, as it expressly prohibits regulation or restriction of religious and certain educational *uses*. See G. L. c. 40A, § 3, second par. ("No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes . . ."). The statute merely prohibits regulation or restriction of the interior area, or interior dimensions, of single-family residences. The bylaw is a permissible regulation of uses accessory to residential use. Considering attics and cellars as accessory use areas merely permits placement of heating and ventilating units and storage facilities inside the residence itself, instead of inside accessory outbuildings, consistent with the authority to regulate "accessory facilities and uses," to protect "open space," and to regulate the "aesthetic qualities of the community." St. 1975, c. 808, § 2A. Moreover, to the extent the definition of "gross floor area" and the floor-to-area ratio operate as a use restriction, they constitute a permissible "intensity of use" regulation. *Id.*

Finally, the developer argues that § 5.22.2 of the bylaw, which allows conversion by right of attic and basement space to habitable space after ten years, is arbitrary and capricious because there is no rational basis to make homeowners wait ten years to

make the conversion. The town contends that the bylaw is designed to prevent developers from thwarting the floor-to-area requirements, although it allows families eventually to occupy greater portions of their home as the family grows. It does this by discouraging developers seeking to build houses out of scale with other houses in the neighborhood by removing some of the economic incentive to include oversized attics or basements designed to be converted immediately into use as habitable space. The town's reasons are rationally related to the goal of the floor-to-area provisions of the bylaw, as well as to at least two general purposes of the zoning statute, namely, regulation of density of population and intensity of use. St. 1975, c. 808, § 2A. The developer has not sustained its burden of showing that the bylaw is invalid. See *Van Sant* v. *Building Inspector of Dennis*, 352 Mass. 289, 292 (1967).

For the foregoing reasons the judgment of the Land Court is affirmed.

*So ordered.*