DANIEL EPSTEIN, trustee,[1] & others[2] *vs.* BOARD OF APPEAL OF BOSTON & another.[3]

No. 09-P-211.

Suffolk. January 8, 2010. - September 21, 2010.

Present: BERRY, BROWN, & SIKORA, JJ.

*Practice, Civil,* Summary judgment. *Zoning,* Person aggrieved, Variance, Conditions. *Evidence,* Opinion.

In a Superior Court action brought by a plaintiff challenging variances and a conditional use permit granted by the board of appeal of Boston for the construction of a residential condominium building, the judge erred in granting summary judgment against the plaintiff, the trustee-owner of four condominium units facing the proposed building, based on lack of standing, where the undisputed elimination of light, air, and views outside the plaintiff's units constituted harm to interests recognized by the Boston zoning enabling act (act) and therefore an aggrievement within the meaning of the act; and where the plaintiff's opinion of diminished property value, as an interest also recognized by the act, created a genuine issue of material fact unsuitable for disposition by summary judgment. [756-761]

CIVIL ACTION commenced in the Superior Court Department on September 14, 2006.

The case was heard by *Robert C. Cosgrove,* J., on motions for summary judgment.

*Joseph F. Hardcastle* for Daniel Epstein, as trustee of the Burden Realty Trust.

*Michael J. Traft* for 58-60 Burbank LLC.

SIKORA, J. This appeal presents a question of standing under the Boston zoning enabling act (enabling act). The dispute

---

[1]Of the Waldorf Condominiums Trust.

[2]Said E. Dawlabani, as trustee of the Waldorf Condominiums Trust; and Daniel Epstein, as trustee of the Burden Realty Trust, intervener.

[3]58-60 Burbank LLC. 58-60 Burbank LLC was substituted for the original codefendants, Michael Meskin, as trustee of the 58-60 Burbank Street Realty Trust, and the 58-60 Burbank Street Realty Trust. See note 4, *infra.*

centers upon a parcel in the Fenway area of the city. The board of appeal of Boston (board of appeal) granted variances and a conditional use permit to the owner of the parcel, 58-60 Burbank Realty Trust (Burbank),[4] enabling it to replace a one-story commercial structure with a four-story residential condominium building. By a subsequent Superior Court action, Daniel Epstein, as trustee of the Burden Realty Trust, the owner of multiple residential units in the adjacent Waldorf Condominiums, challenged the merits of the variances and conditional use permit.[5] After substantial discovery and resulting cross motions, a judge of the Superior Court entered summary judgment against Epstein for lack of standing.[6] For the following reasons, we reverse.

*Background.* The following undisputed facts emerge from the summary judgment record. In May, 2004, Burbank applied to the Boston inspectional services department (department) for a permit to demolish the existing one-story commercial building and to construct in its place a four-story structure containing five residential condominium units. In late 2005, the department denied the application for reasons of nonconformance with requirements of the Boston zoning code (code).[7]

Burbank appealed from the denial and sought variances from the code requirements. After a hearing process in which Epstein presented a written opposition to the proposed variances, the

[4]The 58-60 Burbank Street Realty Trust acquired the property from Northeastern University in 2003. On July 11, 2006, the board of appeal granted the variances and permit. On November 17, 2006, 58-60 Burbank Street Realty Trust conveyed the property to 58-60 Burbank LLC. For simplicity we shall refer to both owners as "Burbank." The change of ownership has no effect upon the merits of the appeal.

[5]The complaint in the Superior Court was initially brought by Epstein and Said E. Dawlabani, as trustees of the Waldorf Condominiums Trust. Subsequently, in his capacity as trustee of the Burden Realty Trust, Epstein was permitted to intervene. See notes 1 and 2, *supra,* and our discussion in the "Background" section, *infra.*

[6]Judgment also entered against Epstein and Dawlabani, as trustees of the Waldorf Condominiums Trust; only Epstein has appealed, in his capacity as trustee of the Burden Realty Trust. See "Background" section, *infra.*

[7]The department found multiple deviations from the code: excessive floor to area ratio; insufficient amount of usable open space; inadequate off-street parking; and the location of the project in a groundwater conservation overlay district.

board of appeal in August of 2006 granted the full relief requested by Burbank.

Epstein and Said Dawlabani, as trustees of the Waldorf Condominiums Trust, owned the abutting building at 54-56 Burbank Street. The Waldorf condominium building consisted of four stories, twenty-three residential units, and common areas. The west side of the Waldorf building faced upon the Burbank lot.

As the sole trustee and beneficiary of the Burden Realty Trust, Epstein owned and rented five units within the Waldorf building. Four of them were situated on the west side of the building and overlooked the Burbank property: one on the fourth floor through four windows; one on the third floor also through four windows; another on the third floor through one window; and one on the second floor through a single window.[8]

The proposed Burbank building would occupy most of the 1660 square feet of the parcel, and would reach the same height as the Waldorf structure. About six feet would separate the Waldorf unit windows from the proposed Burbank building wall. Because of a jog in the Waldorf west wall, the two buildings would be only one foot apart at certain points.

In Epstein's letter of opposition to the board of appeal, he asserted that for approximately one hundred years only a low rise (one- to two-story) building had occupied the Burbank lot; that the "present structure height and size has provided air, light and quality of life to some 50 apartments and the neighborhood for that amount of time"; and that Burbank could develop a viable residential building within the existing code standards governing floor area ratio and requisite outdoor space for light, air, intervals between buildings, and off-street parking.

As a result of the adverse decision of the board of appeal, Epstein and Dawlabani began suit in the Superior Court pursuant to the enabling act, as persons "aggrieved by a decision of [the] board of appeal." St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5. They sued specifically in their capacities as cotrustees of the Waldorf Condominiums Trust.

---

[8]Through separate trusts, Dawlabani maintained ownership interests in three units also situated on the west side of the Waldorf building and overlooking the Burbank property.

Discovery established that both individuals had experience in real estate development and dealing. Epstein had served as a cotrustee of the Waldorf building since at least 1996 or 1997. Through trusts, Dawlabani and Epstein had purchased the structure as a boarded-up building, invested more than $200,000 in the rehabilitation of its common elements, and then sold or rented upgraded units. Epstein owned or managed two other properties (containing six units) within the same Fenway area.

Dawlabani had been engaged in real estate brokerage since 1986 and held brokerage licenses in Massachusetts, California, and Arizona. Through trusts, he held interests in seven units at the Waldorf building and in rental units at four other sites in the area of Northeastern University. He had participated and invested in the rehabilitation of the Waldorf building since the period of 1993 to 1994. He had taken course work in real estate appraisal for renewal of his brokerage licenses.

The thrust of their Superior Court action was that the proposed Burbank project would harm the Waldorf units overlooking the Burbank property "by the loss of light, air, view and a resulting diminution in value." At the conclusion of the discovery period, Epstein and Dawlabani as Waldorf condominium trustees moved for summary judgment upon the merits of their challenge to the variances. Burbank cross-moved for summary judgment upon grounds of the Waldorf trustees' lack of standing. Before argument of the cross motions, Epstein moved to intervene as a plaintiff in his capacity as trustee of the Burden Trust and owner of individual units within the Waldorf building.

The judge ruled that Epstein and Dawlabani lacked aggrievement as Waldorf condominium trustees because their interest and authority in those capacities extended only to the common areas of the building and not to any harm to separately owned units. At the same time, he granted Epstein's motion to intervene as the trustee owner of four units overlooking the proposed Burbank construction. Finally, the judge concluded that, as the owner of those units, Epstein had failed to submit sufficient evidence of their loss of light, air, and view, and of diminished market value, to create a genuine issue of aggrievement. He therefore allowed Burbank's motion for summary judgment against Epstein and Dawlabani as the Waldorf condominium

trustees and against Epstein as the Burden trustee. Epstein has appealed solely in his capacity as the Burden trustee owner of the four units facing the proposed Burbank building.[9] Throughout the remainder of our discussion all references to Epstein relate to his role as the Burden trustee owner of those four units.

*Analysis.* The standard for review of a summary judgment is de novo inspection of the record presented to the motion judge. See, e.g., *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007); *Eastern Holding Corp.* v. *Congress Financial Corp. (New England)*, 74 Mass. App. Ct. 737, 740 (2009). In instances of cross motions, the appellate court assesses the factual materials in the light most favorable to the unsuccessful opposing party. *Albahari* v. *Zoning Bd. of Appeals of Brewster*, 76 Mass. App. Ct. 245, 248 n.4 (2010). The court will draw all permissible inferences and resolve any evidentiary conflicts in that party's favor. See, e.g., *Jupin* v. *Kask*, 447 Mass. 141, 143 (2006); *DiPietro* v. *Sipex Corp.*, 69 Mass. App. Ct. 29, 30 (2007).

1. *Standard of aggrievement.* Section 11 of the enabling act confers standing on "[a]ny person aggrieved by a decision" of the board of appeal. The phrase "[a]ny person aggrieved" is identical to the language of G. L. c. 40A, § 17, conferring standing against zoning boards in all other municipalities of the Commonwealth. The accumulated decisional law under c. 40A, § 17, applies to questions under the enabling act. See especially *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 432-433 (1949); *Sherrill House, Inc.* v. *Board of Appeal of Boston*, 19 Mass. App. Ct. 274, 275 (1985); *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. 930, 930 (2004).

The main axioms and corollaries of aggrievement are well established but sometimes difficult to apply. The complainant must present an injury specific and particular to him, and not a harm general to the community. The courts should not define aggrievement narrowly. The harm must be a perceptible infringe-

---

[9]The judge denied Epstein's motion for reconsideration of the denial of standing to him as a unit owner.

Burbank did not file any notice of cross appeal. In this court, it argues that the motion judge should not have allowed Epstein to intervene to present his claim as a unit owner. For the reasons discussed below, Epstein was presenting an interest and injury worthy of intervention under Mass.R.Civ.P. 24(a) and (b), 365 Mass. 769 (1974).

ment of a legally recognized interest of a definite and not speculative character. Abutters enjoy a rebuttable presumption of aggrievement. If a responding party challenges standing, an abutter's presumption dissolves and he must introduce credible evidence de novo. To achieve standing, the complainant need not establish probable success on the ultimate merits of his claim. Standing will often reduce to a factual question of degree for the trial or motion judge. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). See *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 130-133 (1992).

Additionally, and "[o]f particular importance, the right or interest asserted must be one that the statute under which a plaintiff claims aggrievement intends to protect." *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27-28 (2006). Section 2, third paragraph, of the enabling act (quoted in the margin) includes among the purposes of a contemplated code the provision of adequate light and air, the prevention of overcrowding of land, the avoidance of undue concentration of population, and the conservation of the value of land and buildings.[10] No doubt arises that, as a matter of the law of aggrievement, Epstein was asserting harm to recognized interests in light, air, view, and market value attached to his four abutting units. The judge ruled, however, that Epstein failed as a matter of evidence to demonstrate any reasonable chance of proof of those injuries.

2. *Loss of light, air, and view.* It is undisputed that, from a distance of six feet and at equal height, the proposed Burbank building will shut off substantially the air, light, and view of the ten windows of Epstein's four westward facing units. The units would lose direct, reflected, skyward, and ambient light. However, the judge rejected those apparent losses by reliance

---

[10]"A zoning regulation shall be designed among other purposes to lessen congestion in the streets; to conserve health; to secure safety from fire, panic and other dangers; *to provide adequate light and air*; to prevent overcrowding of land; to avoid undue concentration of population[;] to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; *to conserve the value of land and buildings*; to encourage the most appropriate use of land throughout the city; and to preserve and increase its amenities" (emphasis supplied). St. 1956, c. 665, § 2, third par.

upon a "Shadow Study" submitted by a design and construction consultant in behalf of Burbank. The "Shadow Study" hypothesized the existence of the adjacent Burbank building (at the planned equal height), and at noontime on March 21, June 21, September 21, and December 21, measured the shadow cast across the six-foot interval by either building.[11] Its conclusion was that, at these moments, the Burbank building would not be projecting a shadow toward the Waldorf building. The judge attributed significance to the study as "demonstrat[ion] that Epstein's contention that the new building would alter the amount of light entering the Waldorf property windows is questionable."

However, the "Shadow Study" casts little to no probative light upon the issue of standing. It is neither verified nor material. It does not identify its author. No affidavit explains or certifies it. In these circumstances it has the character of unidentified hearsay. It fails to satisfy the requirement of Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974), that information submitted in support of a summary judgment motion be of a quality "admissible in evidence."

If its information were somehow admissible, it would not effectively respond to the undisputed facts that the Burbank building would now occupy almost all of the once open 1,660 square feet of space adjacent to the ten windows of the four units and throughout the day and night cut them off generally

_____

[11]The resulting data were that on March 21, the Burbank building cast no shadow toward the Waldorf building, while the Waldorf building sent a shadow halfway across the alley; that on June 21, the Burbank building again cast no shadow toward the Waldorf structure, while Waldorf projected a shadow across "a majority of the width of the alley"; that on September 21, the Burbank building again generated no shadow toward the Waldorf building, while the latter sent one across the entire width of the alley; and, finally, that on December 21, the Burbank building cast no shadow toward the Waldorf structure, while the Waldorf produced a shadow covering a quarter of the width of the intervening alley.

In its final paragraph, the one-page text (illustrated by a page of diagrams) summarized its hypothesis:

> "The study concludes that the proposed four-story building at 58-60 Burbank Street will be located northwest of the existing four-story building at 54-56 Burbank Street and therefore cannot cast a shadow but rather absorbs the shadow cast from 54-56 Burbank Street in accordance with the northern direction of the sun."

from daylight, nightlight, circulating air, and views. The passing slants of noontime shadows in the newly created alleyway scarcely mitigate those undisputed losses. They, in turn, confer aggrievement and standing upon Epstein.[12] See *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 377 & n.4 (1988); *Bertrand* v. *Board of Appeals of Bourne*, 58 Mass. App. Ct. 912, 912 (2003); *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. at 931 ("Diminishment of light and air and obstruction of view may be bases for aggrieved person status").

3. *Diminished market value.* The judge rejected Epstein's evidence of the reduced sale and rental value of the affected units. Epstein relied upon his own experience and Dawlabani's for the opinion of their diminished value. The judge termed those sources "speculative and conclusory."[13] However, that characterization overlooked a settled and discrete rule of evidence conspicuously applicable to the circumstances. A nonexpert owner of property may testify to its value upon the basis of "his familiarity with the characteristics of the property, his knowledge or acquaintance with its uses, and his experience in dealing with it." *Winthrop Prods. Corp.* v. *Elroth Co.*, 331 Mass. 83, 85 (1954). The rule applies to valuations of real property for purposes of eminent domain and land damage. See, e.g., *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951) (eminent domain); *Southwick* v. *Massachusetts Turnpike Authy.*, 339 Mass. 666, 668 (1959) (same); *von Henneberg* v. *Generazio*, 403 Mass. 519, 524-525 (1988) (water damage to land); *McCormick* v. *Travelers Indem. Co.*, 22 Mass. App. Ct. 636, 637 (1986) (wind damage to home); *CBI Partners Ltd. Partnership* v. *Chatham*, 41 Mass. App. Ct. 923, 924-926 (1996) (eminent domain). It

---

[12]The judge may have misunderstood the details of the study. He wrote, "The study covers the sunrise and sunset times of the first days of spring, summer, fall, and winter. . . . Epstein offers no response to this evidence." For several reasons, though, Epstein did not need to respond. The study did not cover sunrise and sunset times, but only the noon moment of minimal shadows. The study is not "evidence" within the requirements of Mass.R. Civ.P. 56(e). Its information about high noon shadows is immaterial to the undisputed reality that the new building at a six-foot distance and equal height will at all times massively obstruct light and open views from the abutting windows.

[13]The judge observed also that Epstein had referred to, but not submitted, a professional appraiser's opinion.

applies as well to valuation of personal property.[14] In the trial setting, the judge will rule preliminarily upon the qualifications of the owner. See *Winthrop Prods. Corp.* v. *Elroth Co.*, 331 Mass. at 85; *Blais-Porter, Inc.* v. *Simboli*, 402 Mass. at 273. As usual, the credibility and weight of the opinion remain for the determination of the fact finder. *von Henneberg* v. *Generazio*, 403 Mass. at 524. No principled distinction bars the extension of the knowledgeable owner rule to the subject of zoning aggrievement.

In this summary judgment setting, undisputed information abundantly qualified Epstein to offer an opinion about diminished value. He had participated for more than a decade in the rehabilitation and management of the Waldorf building and had owned and rented multiple units within it. He controlled and rented five other units at two other locations in the same Fenway neighborhood.[15] Finally, elaborate expertise would not be essential in the circumstances for an opinion of the impact upon the rental value of the affected units from a general obstruction of the light, air, and views outside their windows.[16] At the very least, Epstein's competent opinion created a genuine issue of material fact precluding summary judgment upon the question of reduced property value.

*Conclusion.* The entry of summary judgment against Epstein as trustee of the Burden Trust was inappropriate upon two

---

[14]See, e.g., *Menici* v. *Orton Crane & Shovel Co.*, 285 Mass. 499, 503-505 (1934) (machinery); *Blais-Porter, Inc.* v. *Simboli*, 402 Mass. 269, 272-273 (1988) (automobile parts and equipment); *Hastings Assocs.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 172-173 (1997) (going concern value and goodwill of corporation).

[15]Contrast *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 213-214 (2003), in which a layperson owner, without substantiating knowledge or experience, took the position that the location of a nearby communications tower would "per se" reduce the value of her residence.

[16]The summary judgment record contained corroboration of Epstein's opinion from Dawlabani. In deposition he testified that one of his second floor units overlooking the open Burbank space rented regularly at the monthly rate of $1,500, while an identical unit one floor higher on the opposite side of the building and facing a wall ten feet away rented with difficulty at a monthly rate of $1,100. He expected a fifteen to twenty percent loss of rental value for the affected units. He viewed that consequence as a "no-brainer" resting upon the usual reasonable inference that a room with a view is more desirable and valuable than a room without one. Dawlabani's familiarity, knowledge, and experience with the property were coextensive with Epstein's.

independent grounds. First, the undisputed elimination of light, air, and views outside the affected units constituted harm to interests recognized by § 2 of the enabling act and therefore an aggrievement within the meaning of § 11 of the enabling act. Second, Epstein's opinion of diminished property value, as an interest also recognized by § 2 of the enabling act, created a genuine issue of material fact unsuitable for disposition by summary judgment.[17] Epstein has standing. We therefore reverse so much of the judgment as dismissed the complaint of the intervener, Epstein, as trustee of the Burden Realty Trust.

*So ordered.*

---

[17]In *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. at 31-32, the court stated, "A claim of diminution of property values must be derivative of or related to cognizable interests protected by the applicable zoning scheme." It explained that reduced property value cannot serve as a challenge to zoning decisions in isolation from the purposes of the zoning scheme. *Id.* at 32. In this case, the claimed diminished value of the property appears to have status as both a derivative and a direct interest of the Boston zoning scheme. The diminution derives from a loss of the recognized and protected values of light and air. See note 10, *supra*, quoting § 2, third par., of the enabling act. The diminution in value also receives direct recognition in § 2 of the enabling act (the "conserv[ation of] the value of land and buildings") as a specific explicit concern, in combination with others.