NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-301

BRAD L. WATKINS

vs.

NEIGHBORHOOD HOUSE CHARTER SCHOOL FOUNDATION & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Brad L. Watkins, filed a complaint in the Superior Court seeking to annul the decision of the city of Boston's board of appeal (board) to grant zoning relief to defendant Neighborhood House Charter School Foundation (NHCS).[2] NHCS moved to dismiss Watkins's complaint for lack of subject matter jurisdiction pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974).  A judge of the Superior Court allowed the motion, and Watkins appeals, arguing that the judge erred in

_____

    [1] Board of appeal of Boston.

    [2] The board did not file a separate brief in this matter and joined NHCS's brief in full.

determining that NHCS successfully rebutted his presumption of standing as an abutter to the property at issue.  We affirm.

Background.  We recite the facts from "affidavits and other matter outside the face of the complaint which are used to support the movant's claim that the court lacks subject matter jurisdiction."  Ginther v. Commissioner of Ins., 427 Mass. 319, 322 n.6 (1998).  NHCS owns a parcel of land located at 21 Queen Street in Boston (property), on which it has operated a charter school since 2006, providing education to children in grades kindergarten through middle school.  In 2003, the previous owner of the property obtained zoning relief on behalf of NHCS, as prospective owner, to renovate and expand the existing structure and continue the parcel's nonconforming educational use under the Boston Zoning Code (zoning code).  In 2005, Watkins purchased a parcel at 9 Queen Street, which abuts the property to the rear and to the side.

In 2017, NHCS moved the eighth-grade class from the property to a separate high school property in response to increased enrollment.  Desiring to move the eighth-grade class back to the property to rejoin the other middle school grades, NHCS obtained a design for a 21,000 square foot expansion and renovation project (2019 project).  The proposed project would add classrooms, administrative and support space, a gymnasium, a

2

new lobby, and would reconfigure traffic flow and add parking capacity. In 2019, after the design was approved by the Boston Planning and Development Agency, NHCS applied to the board for a conditional use permit and for eight variances from zoning code requirements. The 2019 project, though maintaining the same height and number of stories for the existing building, added a new classroom wing extension that required variances from the zoning code's maximum building story and height allowances, as well as variances from, as herein relevant, the maximum floor area ratio (FAR), and the prohibition on front yard parking. The project would not affect the property's compliance with the zoning code's open space, side yard setback, and rear yard setback requirements. After a view of the property and a hearing, the board granted the variances to NHCS in October 2019. Watkins filed his complaint in the Superior Court shortly thereafter.

Discussion. "Section 11 of the [Boston zoning] enabling act confers standing on '[a]ny person aggrieved by a decision' of the board of appeal." Epstein v. Board of Appeal of Boston, 77 Mass. App. Ct. 752, 756 (2010). "[That] language is identical to that in G. L. c. 40A, § 17, and is subject to the same interpretation." Porter v. Board of Appeal of Boston, 99 Mass. App. Ct. 240, 241 (2021). "A person aggrieved under G. L.

3

c. 40A must assert a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest" (quotation and citation omitted). Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 120 (2011). Furthermore, "the right or interest asserted by a plaintiff claiming aggrievement must be one that the Zoning Act is intended to protect, either explicitly or implicitly." 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012). Any harm to an interest which zoning laws are designed to protect "must be more than de minimis." Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 214 (2020). "[T]he plaintiff's claimed injury must be more than speculative" (quotation and citation omitted). Stone v. Zoning Bd. of Appeals of Northborough, 496 Mass. 366, 374 (2025).

"A plaintiff who is an abutter to the property in question enjoys a presumption that he or she is a 'person aggrieved.'" Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 573 (2016). "[T]he defendant can rebut the presumption by coming forward with credible affirmative evidence that refutes the presumption, that is, evidence that warrant[s] a finding contrary to the presumed fact of aggrievement, or by showing that the plaintiff has no reasonable expectation of proving a cognizable harm" (quotations and citation omitted). Id. Once

4

the presumption is rebutted, "the plaintiff must prove standing by putting forth credible evidence to substantiate the allegations."  81 Spooner Rd., LLC, 461 Mass. at 701.

The burden of proof of standing always remains on the plaintiff, even when the burden of production shifts.  See 81 Spooner Rd., LLC, 461 Mass. at 701.  "[T]he plaintiff must establish -- by direct facts and not by speculative personal opinion -- that his injury is special and different from the concerns of the rest of the community" (quotation and citation omitted).  Picard, 474 Mass. at 573-574.  See Wooten v. Crayton, 66 Mass. App. Ct. 187, 190 n.6 (2006) (in motion where defendant makes "a supported, factual challenge to subject matter jurisdiction" under Mass. R. Civ. P. 12 [b] [1], "the plaintiff bears the burden of proving jurisdictional facts to support [their] claims").  Once the parties have produced their evidence, "[s]tanding essentially becomes a question of fact for the judge," and the "judge's ultimate findings on this issue will not be overturned unless shown to be clearly erroneous." Kenner, 459 Mass. at 119.

Watkins raised several claims of particularized harm in his answers to NHCS's interrogatories.  Of relevance to this appeal are his claims that the 2019 project would (1) decrease the available light and increase shadows on his property;

5

(2) decrease the open space abutting his property; and

(3) generally increase the density of the neighborhood.[3]  The judge found that the project's shadow impact on Watkins's property would be de minimis.  The judge further found that NHCS rebutted Watkins's open space and density concerns by offering credible evidence that the project would comply with the zoning code requirements for "open space, side yard setbacks, rear yard setbacks, lot frontage, lot size, and lot width."  On appeal, Watkins argues that, in finding for NHCS, the judge failed to account for the fact that the 2019 project required height, story, front yard setback, and FAR variances.  He argues that, because the evidence offered by NHCS did not account for the effects of these variances, NHCS could not have successfully rebutted the open space and density harms he alleged.  Watkins also argues that the judge committed error in relying upon the shadow study offered by NHCS as evidence to rebut his claims of increased shadows on his property, claiming the study was unverified and unreliable.  We address each argument in turn.

---

[3] In his brief, Watkins also raises claims about the effect of the 2019 project's relocation of dumpsters and the addition of a fire lane and an entrance near his property.  We cannot discern, however, how these facts might infringe upon a right "that the Zoning Act is intended to protect."  81 Spooner Rd., LLC, 461 Mass. at 700.  And even if we could, Watkins's claimed injuries are speculative.  See Stone, 496 Mass. at 374.

We fail to discern, and Watkins does not explain, how the height, story, and front yard setback variances granted to the 2019 project will cause the alleged open space and density injuries to Watkins's parcel. See Murchison, 485 Mass. at 214 ("the injury must be causally related to violation of zoning laws"). A building's height alone indicates nothing about the open space present on a given parcel, nor does a tall building (or one with more stories) necessarily equate to a denser lot. Furthermore, while a front yard setback may impact a parcel's density and open space, the variance granted to this project relates to aesthetic concerns i.e., that front yards conform with "[e]xisting [b]uilding [a]lignment." The project otherwise conforms to the fifteen-foot minimum front yard requirement of the zoning code.[4] These provisions of the zoning code were, accordingly, not intended to protect Watkins's open space and density interests. See 81 Spooner Rd., LLC, 461 Mass. at 700.

We turn next to Watkins's argument that the project's need for a FAR variance will, in essence, cause it to crowd his property. Floor area ratio restrictions do regulate the "bulk" of buildings on a given parcel. See 81 Spooner Rd., LLC v. Brookline, 452 Mass. 109, 115 (2008) ("regulation of the bulk of

---

[4] The project also required a front yard setback variance to accommodate a parking lot on the other side of the parcel from Watkins's property.

7

a building by considering its internal area, as through the use of a floor-to-area ratio, is a generally recognized and accepted principle of zoning"). Watkins's argument nevertheless fails for two reasons. First, FAR is a measure of "density of population and intensity of use" rather than one of physical crowding. Id. at 113-114 & n.7 (differentiating "bulk" from "size" in 1975 amendment to G. L. c. 40A). Second, "establishing standing requires a plaintiff to do more than merely allege a zoning violation." Murchison, 485 Mass. at 214. Rather, Watkins was required to allege additional, individualized facts to establish standing. Id. A FAR limit protects the general civic interest by limiting the intensity of use on a given parcel. Without more, it cannot form the basis of an individualized injury for purposes of conferring standing. See Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491, 495 (1989) (general civic interest in enforcement of zoning laws is not enough to confer standing). Indeed, if the entire project were to be built underground with no topographical changes, it would still require a FAR variance, yet Watkins's complaint of crowding would plainly fail. It is clear from our review of the record that the individualized facts Watkins presses in this appeal were all related to the open space on the NHCS property and the distance of the project

8

to his home.  These interests are protected by zoning provisions such as setbacks and minimum lot sizes rather than FAR.  We cannot say it was clearly erroneous for the judge to determine that the 2019 project would cause Watkins no "particularized and cognizable injury" where it substantially complied with all dimensional and open space requirements in the zoning code.

Finally, Watkins's argument that the judge gave undue weight to NHCS's shadow study, which rebutted his allegation that the project would cast shadows on his property, has no merit.  NHCS submitted an expert affidavit explaining a shadow study, which indicated that the only new shadow that would affect Watkins's property would occur only in the morning during the winter.  Watkins first claims that the photographs that formed the basis for the shadow study were not properly authenticated because the expert did not take them himself.  We are not persuaded, as photographs need only be authenticated by a witness who can testify that they are a fair and accurate representation of what they purport to depict.  See Commonwealth v. Housen, 458 Mass. 702, 712 (2011).  "Authentication is a preliminary question of fact for the judge to decide." Renzi v. Paredes, 452 Mass. 38, 52 (2008).  It was within the discretion of the judge to decide that NHCS's expert was competent to authenticate the photographs.  See id.  Furthermore, Watkins

9

himself acknowledged that the photos in the expert's affidavit accurately depicted his property.

Watkins next claims that, because the shadow study in question was performed in 2018 and was based on a different project configuration, it was not probative on his claimed shadow harm. While such an argument could be persuasive in a different situation, here the classroom portion of the project -- the only addition to the property that could cast a shadow on Watkins's property -- did not change between the 2018 study and the final project. Watkins cites Epstein, 77 Mass. App. Ct. at 758, for the proposition that a shadow study with no author and no affidavit is immaterial in a standing determination. The facts here are significantly different than in Epstein because NHCS's expert submitted an affidavit explaining the facts underlying the study and its methodology. Moreover, the expert was the "Principal-in-Charge" of the 2019 project, and his design firm produced the shadow study. Furthermore, Watkins offered no competing evidence to contradict the shadow study, and it was his burden to prove the jurisdictional fact that the project would indeed cast shadows upon his property. See Wooten, 66 Mass. App. Ct. at 190 n.6.

On the record presented, the judge did not clearly err in finding that Watkins failed to articulate a harm, personal to

10

him, that is "more than de minimis," Murchison, 485 Mass. at 214, or beyond "speculative." Stone, 496 Mass. at 374.

Judgment affirmed.

By the Court (Rubin, Walsh & Hershfang, JJ.[5]),

Clerk

Entered:  March 17, 2026.

---

[5] The panelists are listed in order of seniority.