78 Mass. App. Ct. 233 (2010)                                    233

81 Spooner Road, LLC *v.* Zoning Board of Appeals of Brookline.

81 Spooner Road, LLC *vs.* Zoning Board of Appeals of
Brookline & others[1] (and a consolidated case[2]).

No. 09-P-1248.

Suffolk. March 5, 2010. - November 9, 2010.

Present: Kafker, Graham, & Grainger, JJ.

Further appellate review granted, 459 Mass. 1104 (2011).

*Zoning,* Person aggrieved, Timeliness of appeal, Notice, Interior area of
residence.

In civil actions brought in the Land Court, pursuant to G. L. c. 40A, § 17,
arising from a challenge by abutters to a building permit for the construc-
tion of a single-family home on a lot owned by a developer, the judge
properly concluded that the developer failed to rebut the abutters' presump-
tive standing as persons aggrieved [241-243]; further, there was no merit to
the developer's contention that the abutters' underlying appeal to the town
zoning board of appeals had been untimely filed, where, although their ap-
peal was filed more than thirty days after the permit's issuance, nothing in
the record showed that they had any notice at all, actual or constructive, of
the permit's existence during the thirty-day appeal period [243-244].

In civil actions brought in the Land Court, pursuant to G. L. c. 40A, § 17,
arising from a decision of a town zoning board of appeals (board) rescind-
ing a building permit to construct a single-family home on a lot owned by
a developer (building lot), the issuance of which had been challenged by
abutters on the ground that the building lot was one of two lots created by
a so-called "approval not required" plan (ANR plan) that had rendered
both the building lot and the contiguous lot (contiguous lot) nonconform-
ing as to the maximum floor area ratio (FAR) permitted by the town's zon-
ing bylaw, the judge properly upheld the board's decision to revoke the
permit, where an unfinished second-floor space (designed and built by the
developer with the intention of use as living quarters) did not constitute an
"attic" within the meaning of the bylaw, and was therefore not exempt
from inclusion in the FAR calculation for the structure [244-246]; further,
the judge properly concluded that the developer, as a result of the ANR
plan and development scheme, caused the contiguous lot to be nonconform-
ing as to the FAR provision of the bylaw, and thereby infected the building
lot, rendering it an invalid lot [246-247].

CIVIL ACTIONS commenced in the Land Court Department on
November 10, 2005 and November 14, 2005.

[1] George P. Fogg, III, and Frances K. Fogg.

[2] George P. Fogg, III, & another *vs.* Zoning Board of Appeals of Brookline
& another.

The cases were heard by *Charles W. Trombly*, J.

*Jeffrey P. Allen* for 81 Spooner Road, LLC.

*James Gray Wagner* for George P. Fogg, III, & another.

*Jennifer Dopazo Gilbert*, Town Counsel, for zoning board of appeals of Brookline.

GRAHAM, J. Hearing a zoning enforcement appeal, filed by Frances K. Fogg and George P. Fogg, III, the town of Brookline (town) zoning board of appeals (board) revoked a building permit that had issued to the developer, 81 Spooner Road, LLC (LLC). That permit had authorized LLC to construct a new single-family home on a lot (71 Spooner Road) it owned in the Chestnut Hill section of the town. The board rejected the Foggs' claims respecting an adjacent property (81 Spooner Road) and its vintage home, which LLC had by then sold to third persons, who were not summonsed as parties in this action. The Foggs are abutters to 71 Spooner and 81 Spooner Road.

In the Land Court, LLC and the Foggs filed cross appeals from the board's decision. The companion actions were tried jointly to a judge, who affirmed the board's revocation of the building permit. The judge found no merit to the claims of error advanced by LLC. The judge, however, agreed with the Foggs that LLC's development scheme had caused the 81 Spooner Road home to be nonconforming with the town's zoning bylaw (bylaw), a flaw which affected 71 Spooner Road also, rendering it an invalid building lot. From the separate judgments entered in each action, LLC filed a timely appeal.[3] We affirm.

1. *Background.* a. *Facts.* We summarize the facts found by the Land Court judge, supplemented by undisputed facts of record. When LLC acquired it in June of 2004, 81 Spooner Road was then comprised of 22,400 square feet of land, on which stood a 1910 colonial revival home with six bedrooms and 3,812 square feet of living space. By all accounts, 81 Spooner Road conformed with local zoning. The home was (and remains) situated in a S-10 residential zoning district.

In February of 2005, at the behest of LLC, the town's planning board endorsed the developer's approval-not-required (ANR) subdivision plan. G. L. c. 41, § 81P. The plan allowed

---

[3]LLC's appeals were consolidated by an order of this court.

LLC to divide 81 Spooner Road into two separate lots: a smaller 81 Spooner Road lot, comprised of 10,893 square feet of land, with the vintage home; and a larger land lot, known as 71 Spooner Road, with 11,648 square feet of area.[4] In March, 2005, LLC sold 81 Spooner Road,[5] retaining 71 Spooner Road for development. A sketch made in the Land Court is attached hereto as an Appendix.

Subsequently, on April 8, 2005, LLC obtained a building permit, from the town's building commissioner, authorizing its construction of a single-family home at 71 Spooner Road. The building department did not provide any notice to the Foggs. LLC posted no notice of the permit on its property; nor did LLC begin construction within the thirty-day appeal period. After learning of the permit, as a result of repeated inquiries of the town's building department, the Foggs made demand of the commissioner to enforce the local bylaw against LLC, for reasons cited in a letter to him, dated May 16, 2005. The commissioner refused; in his reply to the Foggs, of May 31, 2005, he held to the view that 71 and 81 Spooner Road conformed to requirements of the bylaw. From his denial, the Foggs appealed to the board, G. L. c. 40A, § 8, seeking relief from the alleged violations.[6]

b. *Foggs' appeal filed with the board.* The Foggs alleged that 71 and 81 Spooner Road violated local zoning requirements, for different reasons, which they set forth in detail in a written submission filed with the board. In large part, the Foggs asserted each of the homes, in its own way, exceeded the maximum floor area ratio (FAR) allowed under the bylaw.

A floor area ratio measures the gross floor space of a building in comparison to the area of its underlying lot.[7] *Woods* v. *Newton,* 351 Mass. 98, 102 (1966) (purpose or "essential scheme" of

---

[4]An ANR endorsement is "essentially preliminary to the issuance of a building permit," *Cornell* v. *Board of Appeals of Dracut,* 453 Mass. 888, 893 (2009), and "is not an attestation of compliance with zoning requirements." *Id.* at 892.

[5]On March 25, 2005, LLC sold the 81 Spooner Road property to Fredrik Verlander and Rebecca Verlander.

[6]They did so on June 27, 2005, some twenty-seven days from the building commissioner's written reply denying their enforcement request.

[7]This is not a new zoning or land use device used by local permit granting

FAR ordinance is to maintain a certain ratio between lot area and bulk size of a structure on said lot); *81 Spooner Rd. LLC* v. *Brookline*, 452 Mass. 109, 115 (2008) (regulating a building's "bulk," by way of floor area ratio, "is a generally recognized and accepted principle of zoning").[8] In this way, the bylaw's FAR requirement protects against undue building density, and promotes the bylaw's overarching policy to advance the health, safety, and welfare of the town's residents. To that end, the bylaw, among other things, seeks to foster the most appropriate use of land, prevent overcrowding of land, and encourage the preservation of historic and architecturally significant structures.[9]

For 71 Spooner Road, the Foggs noted the "current" plans described the proposed "living area" as 3,511 square feet. That gross floor area number, divided by the lot area (i.e., 11,648 square feet), yields a .30 FAR, the maximum allowed under the bylaw. The Foggs argued the FAR figure was inaccurate because

authorities in our Commonwealth, or the town of Brookline, specifically. For residential buildings, see, e.g., *Vagts* v. *Superintendent & Inspector of Bldgs. of Cambridge*, 355 Mass. 711, 712 (1969); *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 198 (1974); *Bonan* v. *Boston*, 398 Mass. 315, 318 & n.6 (1986); *St. Botolph Citizens Comm., Inc.* v. *Boston Redev. Authy.*, 429 Mass. 1, 4 & n.5 (1999); *Perry* v. *Building Inspector of Nantucket*, 4 Mass. App. Ct. 467, 471 (1976); *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 308 & n.4 (1990); *McGee* v. *Board of Appeal of Boston*, 62 Mass. App. Ct. 930, 931 (2004). For commercial property, see, e.g., *Belfer* v. *Building Commr. of Boston*, 363 Mass. 439, 440 (1973); *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 494 (1989); *W.R. Grace & Co.-Conn.* v. *City Council of Cambridge*, 56 Mass. App. Ct. 559, 561 (2002); *Christensen* v. *Boston Redev. Authy.*, 60 Mass. App. Ct. 615, 619 (2004). For mixed residential and commercial use, see, e.g., *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 297 (1972). For a planned development area, see, e.g., *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 448 (1987). For educational institutions, see, e.g., *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486, 490 (1964); *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 378 (1988); *Trustees of Boston College* v. *Board of Alderman of Newton*, 58 Mass. App. Ct. 794, 796 (2003).

[8] See generally 3 Rathkopf & Rathkopf, Zoning and Planning § 54:2 (2009). See also Comment, Building Size, Shape, and Placement Regulations: Bulk Control Zoning Reexamined, 60 Yale L. J. 506 (1951). As the floor-to-area ratio increases, the density of land use likewise increases. *St. Botolph Citizens Comm., Inc.* v. *Boston Redev. Authy.*, supra at 4 n.5.

[9] Though it made no extended reference to art. I of the bylaw, the board's reasoned response knocking down LLC's line of interpretation for the FAR provisions at issue here strongly suggests it based its decision on the policies behind the bylaw.

LLC did not account for nearly 1,000 square feet of "unfinished" space located on the second floor of this three-story home. Though left unfinished, this disputed space, the Foggs claimed, had been designed and intended for use as living quarters, namely, a master bedroom and master bath suite. They said this could be reasonably inferred from the fact that LLC's house plans had identified bedrooms "2," "3," "4," and "5" in the home, but failed to disclose bedroom no. 1. On plans drawn up by LLC's architect, the disputed space was described as a "master bed-room," "master bath," with two walk-in closets (WIC). LLC approved these plans.

More generally,[10] the Foggs argued that LLC's over-all plan to divide 81 Spooner Road, creating two separate lots, led to a dense development project for their residential neighborhood.[11] Originally, 81 Spooner Road had a .17 FAR; after being divided, the property had a .36 FAR.[12] From this, the Foggs argued to the board that 71 Spooner Road was an invalid lot because its creation, as a result of LLC's ANR plan, had rendered 81 Spooner Road nonconforming as to the bylaw's FAR requirement.

In his decision (May 31, 2005 letter), the building commis-

---

[10]The Foggs claimed that a new driveway constructed by LLC for 81 Spooner Road did not provide conforming off-street parking, in accordance with bylaw requirements. Off-street parking for 81 Spooner Road, prior to the ANR plan division, was provided for by a driveway and associated space on the westerly side of the lot, which is now a part of 71 Spooner Road. LLC obtained a permit to build a new driveway on the east section of the then single parcel (prior to the planning board's ANR endorsement). This work required extensive excavation into a hillside area, close to Mr. Fogg's property. The Foggs challenged this permit, with no success, before the building commissioner, and eventually, the board. In its June, 2005 appeal, the Foggs invoked its earlier claim that the grade, or slope, of the driveway did not satisfy the bylaw requirement, § 6.04.4(e), for a "grade of [ten percent] or less in the first [twenty] feet from the property line." Based on the "merger" doctrine, see *DiCicco v. Berwick*, 27 Mass. App. Ct. 312, 313-314 (1989), the Foggs claimed the two lots, previously held in common ownership by LLC, ought to be considered one lot to minimize nonconformities with local zoning. The board summarily rejected this discrete claim, based on the fact it had been shown a certified plan confirming the new driveway's compliance with the bylaw.

[11]In May of 2005, the town meeting voted to adopt an amendment to the bylaw, establishing a Chestnut Hill North Local Historic District, which covers Spooner Road, among other ways.

[12]The Foggs established this was the FAR for 81 Spooner Road based on expert evidence they had introduced at trial.

sioner answered this contention, indicating a permit had been issued to Fredrik and Rebecca Verlanders, the owners of 81 Spooner Road, authorizing the removal of interior attic finish from their home so it would comply with the FAR. The board took this same tack, rejecting the Foggs' claim as to 81 Spooner Road, on the "assumption" the Verlanders would remove finish from their third-floor attic space.[13]

2. *Land Court judgments.*[14] Apart from affirming the board's decision to rescind the building permit for 71 Spooner Road in the action commenced by LLC (see Land Court case no. 315582), the judge decided (as alleged by the Foggs) that, as a result of LLC's development plan, 81 Spooner Road "was rendered nonconforming" as to its FAR (see Land Court case no. 315662).

From this, the judge ruled that the "construction of a single-family dwelling on 71 Spooner Road would require that 81 Spooner Road be brought into compliance with the floor-to-area [ratio] requirement of the [z]oning [b]y-[l]aw, either by sufficiently reducing the floor-to-area ratio of [81 Spooner Road] or obtaining relief from [this bylaw] requirement." His ruling formed the basis for the judgment entered in the Foggs' own action. The judgment declared the board had properly ruled a building permit "would be allowable" on 71 Spooner Road on the condition that all interior finish be removed from 81 Spooner Road's third-floor attic. The Foggs did not appeal from or quarrel with that judgment.

In this appeal, LLC challenges the Land Court's judgments, arguing that: the judge erred and abused his discretion in upholding the board's decision to revoke the permit; the Foggs failed timely to appeal to the board within thirty days from the issuance of the building permit; they did not have standing to obtain zoning relief before the board or Land Court; and the judge erred in applying the common-law doctrine of infectious invalidity to this zoning dispute.[15]

---

[13]This proved not to be the case, as the Land Court judge later determined.

[14]Pretrial, LLC filed a motion to dismiss the Foggs' appeal, on the stated ground that the Foggs lacked standing to appeal to the board, and by consequence, to press a further appeal before the Land Court. The judge denied that motion.

[15]LLC incorrectly argues the judge erred in deferring to the legal conclusion of the board, and ought to have held that the building permit had properly

We defer addressing the parties' legal contentions in order that we may describe briefly the framework of the bylaw pertinent to this appeal.[16]

3. *Zoning bylaw.* In 2008, prior to the entry of the challenged judgments here, the Supreme Judicial Court declared the bylaw to be legally valid, to the extent it employed a maximum "floor area ratio," to regulate the bulk size of single-family homes in the town. *81 Spooner Road, LLC* v. *Brookline,* 452 Mass. 109 (2008).

Addressing a prior appeal by LLC,[17] from a different Land Court decision, the Supreme Judicial Court declared the bylaw did not violate the Legislature's directive in G. L. c. 40, § 3, second par., which commands: "[n]o zoning ordinance or bylaw shall regulate or restrict the interior area of a single-family residential building. . . ."

Construing the statutory language, for purposes of reviewing LLC's bylaw challenge, the court determined that the FAR

issued, based on equitable considerations. LLC relies on language in G. L. c. 40A, § 17, permitting a court to "make such other decree as justice and equity may require."

"Massachusetts courts have long declined to construe the statutory language 'make such other decree as justice and equity may require,' G. L. c. 40A, § 17, as permitting a reviewing court 'to invade the whole area of administrative discretion.' " *Wendy's Old Fashioned Hamburgers of New York, Inc.* v. *Board of Appeal of Billerica,* 454 Mass. 374, 381 & n.21 (2009), quoting from *Board of Appeals of Dedham* v. *Corporation Tifereth Israel,* 7 Mass. App. Ct. 876, 876 (1979). The Supreme Judicial Court has ruled this language in § 17 "merely requires 'a decree according to law.' " *Wendy's Old Fashioned, supra* at 381 n.21, quoting from *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 558 (1954). That was accomplished here.

[16]The bylaw, and its defined terms respecting the FAR requirement, give context to the judge's findings and rulings. Cf. *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 545 (1916) ("Every opinion must be read in the light of the facts then presented. Statements of rule as applicable to that case cannot be taken out of their context and stretched to different circumstances not before the mind of the court").

[17]Pursuant to G. L. c. 240, § 14A, LLC challenged the validity of the town's bylaw as it applied to single-family residences in the town. LLC commenced an action in the Land Court. The same Land Court judge who later presided over the companion cases now at issue rejected LLC's challenge, ruling on summary judgment that the town's adoption and use of a FAR zoning device, as questioned, was a permissible exercise of municipal zoning power. On direct review, the SJC affirmed the Land Court's judgment. *81 Spooner Road, LLC* v. *Brookline,* 452 Mass. 109 (2008).

240                                    78 Mass. App. Ct. 233 (2010)

81 Spooner Road, LLC v. Zoning Board of Appeals of Brookline.

regulation had only an "incidental" effect, as opposed to an impermissible "direct" impact, on the interior area of single-family homes, and, as such, was a lawful exercise by the town of its delegated zoning power. *81 Spooner Road, LLC, supra* at 117.

Section 5.20 of the bylaw forms the core of its FAR requirement. That provision mandates: "For any building or group of buildings on a lot the ratio of gross floor area to lot area shall not exceed the maximum specified" in the bylaw's dimensional requirements table. 71 Spooner Road and 81 Spooner Road are situated in a residential S-10 district of the town, which allows a maximum .30 FAR for all single-family dwellings.

The area of the 71 Spooner Road lot is 11,648 square feet. LLC admits the gross floor area of a new single-family residence on the lot must not exceed 3,494 square feet.

a. *Gross floor area.* "Gross floor area" is defined by § 2.07 of the bylaw as follows:

> "The sum of the areas of the several floors of a building, including areas used for human occupancy in basements, attics, and penthouses, as measured from the exterior faces of the walls."

There is an express exemption under § 2.07 of the bylaw for "cellars, unenclosed porches, or attics *not used for human occupancy*," which, if applicable, shall be excluded from the gross floor area count of a given single-family dwelling.[18] (Emphasis supplied).

b. *Attic.* LLC claims (as it did below) that the disputed "unfinished" space in the 71 Spooner Road home fell within the bylaw's definition of an attic "not used for human occupancy," and therefore, must not be included in that home's gross floor area count. Section 2.01(3) of the bylaw defines an "attic" as the "[s]pace in a building between the roof framing and the ceiling beams of the rooms below and not considered habitable space."[19]

c. *Habitable space.* "Habitable space" is defined by § 2.08.1

---

[18]Floor space intended and designed for the parking of motor vehicles, or for accessory heating and ventilating equipment, is also exempt under § 2.07.

[19]"When a municipality has defined terms expressly in its zoning code, a court may not enlarge that definition with its 'own conceptions of expediency.' " *Melrose-Wakefield Hosp. Assn.* v. *Board of Appeals of Melrose*, 31

of the bylaw as "[s]pace in a structure for living, sleeping, eating, or cooking or otherwise *used* for human habitation" (emphasis supplied). It is noteworthy that the bylaw provision, § 2.21(2), defines "use" as follows: "[t]he purpose for which land or a building is arranged, designed, or intended, or for which either land or a building is or may be occupied or maintained." Reading these two related terms together, so as to make a harmonious whole of the bylaw, habitable space is meant to encompass that space, in a building or part thereof, which is designed or intended for human habitation. *Foxborough* v. *Bay State Harness Horse Racing & Breeding Assn., Inc.*, 5 Mass. App. Ct. 613, 618 (1977) ("bylaw should be interpreted as a harmonious whole").

4. *Discussion.* a. *Standing.* Only a person "aggrieved" may obtain zoning relief through the administrative and judicial appeal process. G. L. c. 40A, §§ 8, 17. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). *Chongris* v. *Board of Appeals of Andover*, 17 Mass. App. Ct. 999, 1000 (1984).[20] To fit this characterization, a party must offer evidence demonstrating a "plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). A person aggrieved must offer proof to show his or her injury is " 'special and different' " from concerns of the community at large. *Planning Bd. of Hingham* v. *Hingham Campus, LLC*, 438 Mass. 364, 369 (2003), quoting from *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999). *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 132 (1992).

An abutter to property on which another is allegedly acting in violation of a local bylaw or ordinance is presumed to be an "aggrieved" person with standing to contest a claimed violation. G. L. c. 40A, § 11. Pursuant to § 11, Frances Fogg, as a direct abutter to the building lot in question — 71 Spooner Road — is

Mass. App. Ct. 923, 924 (1991), citing *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929). See also *Kurz* v. *Board of Appeals of North Reading*, 341 Mass. 110, 112 (1960).

[20]"Aggrieved person status is no less a jurisdictional condition to maintaining an appeal to a board of appeal under G. L. c. 40A, § 8, than it is to maintaining [an action for] judicial review under § 17." *Chongris, supra* at 1000.

presumed to have legal standing to challenge LLC's alleged noncompliance with the local bylaw. *Watros* v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. 106, 111 (1995). LLC concedes George Fogg shared that presumptive status; however, LLC contends it offered evidence rebutting George Fogg's presumed legal status. The judge did not see it that way, and we concur in his determination. "[A] judge's finding that a person is or is not aggrieved will not be set aside unless the finding is clearly erroneous." *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 440 (2005). See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996).

To effectively rebut the Foggs' presumptive standing, LLC was obliged to offer evidence " 'warranting a finding contrary to the presumed fact.' " *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 34 (2006), quoting from *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258 (2003). It must be of a type that is credible and sufficient to rebut the particular claims of injury advanced by an abutter. LLC does not identify any expert or independent forensic evidence in the record to show it met its burden. *Sweenie* v. *A.L. Prime Energy Consultants*, 451 Mass. 539, 543 n.11 (2008). *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 212 n.6 (2003).

Before the judge, LLC offered excerpts from a deposition of George Fogg, in an effort to rebut his presumptive legal status. LLC misapprehends its burden of production and persuasion. While it is true a party's unsubstantiated opinions are not adequate to confer standing,[21] LLC cannot claim shelter under this rule and cause the burden to shift to George Fogg, simply by offering his opinion testimony and by drawing speculative conclusions from that testimony.[22] The judge correctly declined LLC's

---

[21]See *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688 (1994); *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. at 211.

[22]On appeal, LLC raises no argument as to the standing of Frances Fogg. The fact that one of the Foggs was an aggrieved person, as understood under c. 40A, was sufficient to permit an appeal from the board's decision. *Martin* v. *The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 434 Mass. 141, 145 (2001). *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 n.7 (1986).

invitation to require the Foggs to prove their own standing, in the absence of a sufficient rebuttal. The board had jurisdiction to entertain the Foggs' zoning appeal, as did the Land Court.

b. *Timeliness of Foggs' appeal to board.* Nor is there merit to LLC's claim that the Foggs' appeal was untimely filed with the board. In making this jurisdictional argument, LLC had asserted the Foggs had "knowledge of the commissioner's issuance of the building permit within" the thirty-day appeal period. The judge rejected LLC's contention along this line and denied its corresponding summary judgment motion, filed more than eight months after trial had concluded.[23]

The judge found there was "nothing" in the record to show that the Foggs had any notice at all, actual or constructive, of the building permit's existence, authorizing construction on 71 Spooner Road, during the thirty-day period, from April 8, when the permit had issued to LLC. No such showing has been made here, consistent with our opinion in *Gallivan* v. *Zoning Bd. of Appeals of Wellesley*, 71 Mass. App. Ct. 850 (2008), where it had been conclusively established, by uncontroverted proof, that an abutter, who had belatedly challenged a building permit's issuance, did in fact have both "adequate" notice of the permit's issuance and a "fair opportunity" to bring a timely appeal within the thirty-day appeal period. *Id.* at 855, 857.

A zoning enforcement appeal procedure has been held to be necessary to protect a person aggrieved by a violation of the zoning law, under circumstances where he or she has not had notice of, and a fair opportunity to challenge, the permit within the thirty-day appeal period, running from its issuance.[24] *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 520 (1965). *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 480-483 (1984). *Elio* v. *Zoning Bd. of Appeals of Barnstable*, 55 Mass. App. Ct. 424, 429-430 (2002). *Fitch* v. *Board of Appeals of Concord*, 55 Mass. App. Ct. 748, 751 (2002). Without a right of

---

[23]The judge ruled that LLC's motion was untimely and denied LLC relief on that basis as well.

[24]Prior to the enactment of the Zoning Act, see St. 1975, c. 808, § 3, mandamus was the recognized remedy for the procedure now established in c. 40A. *Sunderland* v. *Building Inspector of North Andover*, 328 Mass. 638, 640 (1952). *Gricus* v. *Superintendent & Inspector of Buildings of Cambridge*, 345 Mass. 687, 690 (1963).

appeal under c. 40A, an aggrieved party who lacks notice of a local zoning decision would be left without a remedy to prevent further overcrowding or dense building lot coverage, in his or her immediate neighborhood. See *Dwyer* v. *Gallo*, 73 Mass. App. Ct. 292, 296 (2008); *Sheppard* v. *Zoning Bd. of Appeal of Boston*, 74 Mass. App. Ct. 8, 11-12 (2009). That is true here.

The permit's issuance did not, within the following thirty-day appeal period, "come to the attention" of the Foggs. The town provided no written notice to the Foggs. Nor did LLC commence construction, under its permit, during the appeal period. This appeal is quite unlike *Gallivan* and the judge correctly rejected LLC's characterizations to the contrary.

c. *Validity of board's decision.* On appeal from a decision of a local zoning board, a judge of the Land Court (or Superior Court) shall hear the dispute de novo and determine the legal validity of a board's decision, on the facts as found by the court. *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 (1972). *Lobisser Bldg. Corp.* v. *Planning Bd. of Bellingham*, 454 Mass. 123, 126 (2009). Mindful of the settled standard,[25] the judge properly upheld the board's decision to revoke the building permit.

The crux of the dispute as to 71 Spooner Road boils down to a narrow issue: whether "unfinished" space, nearly 1,000 square feet, located on the second floor of the home, must be added to its *gross floor area* count, for determining FAR compliance. If so, it is accepted 71 Spooner Road (as presently designed and constructed) exceeds the .30 FAR maximum. LLC's principals, Timothy Kelleher and Dennis Cronin, admitted as much at trial.[26]

Drawing from the bylaw definitions of "attic" and "habitable

---

[25]Though the board's own findings are due no evidentiary weight, judicial review is limited: "[s]o long as 'any reason on which the board can fairly be said to have relied has a basis in the trial judge's findings and is within the standards of the zoning by-law and the Zoning Enabling Act, the board's action must be sustained regardless of other reasons which the board may have advanced.' " *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 76 (2003), quoting from *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 356 (2001).

[26]Kelleher confirmed he was familiar (as of 2005) with the bylaw, and, specifically, its use of a floor area ratio, for regulating the density (or "bulk" size) of a new single-family dwelling. Kelleher and Cronin, to one degree or another, confirmed it was LLC's then intention to leave the nearly 1,000 square foot space unfinished until such time as an occupancy certificate

space" and related FAR provisions,[27] its study of building plans filed with the town, and its inspection of the partially-built 71 Spooner Road dwelling, the board concluded LLC had designed and built the unfinished second-floor space with the intention of using it as living quarters. What was "readily apparent" to the board members, who heard this matter, was that the disputed space was not only "accessible" by a stairwell that provided code compliant access to other space on the home's second floor, but also that the disputed space had more than the minimum ceiling height to be suitable for human occupancy.[28]

The board thus found the disputed unfinished second-floor space was not an exempt "attic" as defined by § 2.01(3) of the bylaw.[29] The judge determined that the board's interpretation of

had issued. Once that occurred, LLC intended to perform the necessary finish work to make the space suitable as living quarters.

[27]The purpose of the dimensional requirements prescribed by the bylaw, such as floor area ratio, area setbacks, and height restrictions, is to promote justifiable public health and general safety considerations. Our courts have consistently held as much. *Welch* v. *Swasey*, 193 Mass. 364, 373 (1907), aff'd, 214 U.S. 91 (1909), and authorities cited in note 7, *supra*. See *122 Main St. Corp.* v. *Brockton*, 323 Mass. 646, 650 (1949). LLC and the Foggs offer sharply different interpretations of the bylaw's defined terms — such as an exempt "attic" and "habitable space"; they do not, however, question the public policies served by the bylaw's FAR regulation.

[28]The disputed space is located on the same second-floor level and off the same hallway as other bedrooms on that level. There was expert testimony admitted at trial that the floor capacity, headroom, light, and air within the disputed space satisfied accepted criteria for human habitation. It was also shown that the pattern and size of the windows, layout of the walls, and ceiling configuration all tended to indicate that the disputed space was intended for human occupancy.

[29]The board did not accept LLC's contention that the bylaw did not define "habitable space" by reference as to what a landowner "intended" for the space in question. The board rejected LCC's assertion that habitable space, as defined by the bylaw, encompassed only interior area actually finished as code compliant living space, as of the issuance of a certificate of occupancy. The board was right to do so, given that the meaning of "habitable space," under the bylaw, includes space that is used, or intended for use, for purposes of human habitation.

The board characterized LLC's argument as advancing an interpretation of the bylaw that was "contrary to common sense" and offensive to its "clear purpose, intent and scope." A local zoning bylaw must be reasonably construed, and must not be interpreted in a manner that would produce an absurd result. *North Shore Realty Trust* v. *Commonwealth*, 434 Mass. 109, 111-112 (2001). "If literalness is sheer absurdity, we are to seek some other meaning whereby

the bylaw was reasonable and entitled to deference. *Wendy's Old Fashioned Hamburgers of New York, Inc.* v. *Board of Appeal of Billerica,* 454 Mass. at 381. The judge also shared the board's conclusion that the disputed unfinished space at 71 Spooner Road was not an "attic" as defined by the bylaw and, as such, was required to be included in the gross floor area enumeration for that structure. We agree.

d. *Infectious invalidity.* As for the 81 Spooner Road home, the board pointed out it had been advised by the building commissioner's office that the new owners (Fredrik and Rebecca Verlander) had "applied" for a building permit to remove "all interior finish" from their third-floor attic, to make it nonhabitable, and, thus, exempt from the gross floor area and FAR calculation.[30] On this "assumption," and given that the local bylaw then made provision for a homeowner to "convert" an attic into habitable space, the board inferred a homeowner could do the opposite: namely, convert a habitable attic into a nonhabitable exempt attic, a practice that the board had, on at least one prior occasion, acknowledged to be permissible.

The Foggs had argued because 81 Spooner Road was caused to be nonconforming with the bylaw's FAR requirement, this flaw, they said, "infected" 71 Spooner Road, rendering it an invalid lot. The board rejected this argument. The judge overturned this aspect of the board's decision, ruling that 71 Spooner Road was an invalid building lot, based on the common-law infectious invalidity doctrine as applied to the facts found by him pursuant to his de novo review.

The judge found that Frederik and Rebecca Verlander (owners of 81 Spooner Road) had not removed interior finish from their third-floor attic. The judge determined the third-floor attic of 81 Spooner Road must be included in the home's gross floor area count. LLC, as a result of its ANR plan and development scheme, caused 81 Spooner Road to be nonconforming with the bylaw. Relying on *Alley* v. *Building Inspector of Danvers,* 354

reason will be instilled and absurdity avoided." *Cadle Co.* v. *Vargas,* 55 Mass. App. Ct. 361, 366 n.7 (2002), quoting from *Outlet Embroidery Co.* v. *Derwent Mills, Ltd.,* 254 N.Y. 179, 183 (1930) (Cardozo, C.J.).

[30]The third-floor attic of the 81 Spooner Road home had two primitive bedrooms, a space with a nonfunctioning toilet and sink, and an unfinished "central" area situated between the two bedrooms.

Mass. 6, 8 (1968),[31] the judge ruled that 81 Spooner Road's non-conformity, which was a product of LLC's ANR plan, "infected" 71 Spooner Road, rendering it an invalid lot. We agree.

Seventy-one Spooner Road admittedly conforms to dimensional limits of the bylaw. That is insufficient, however, where, as here, LLC's division of an existing conforming lot — 81 Spooner Road — not only created a new lot but also left the remainder of 81 Spooner Road nonconforming. The judge correctly held 71 Spooner Road was infected by the resulting violation on the contiguous 81 Spooner Road parcel. See *Alley* v. *Building Inspector of Danvers, supra.* Compare *Planning Bd. of Nantucket* v. *Board of Appeals of Nantucket,* 15 Mass. App. Ct. 733, 737-738 (1983), with *Murphy* v. *Kotlik,* 34 Mass. App. Ct. 410, 414 & n.7 (1993). LCC may not form a new building lot by dividing an existing conforming lot if as a result the latter is rendered nonconforming by such a division.

In short, the Land Court judge correctly ruled the board's decision to revoke the permit was based on legally tenable and justifiable grounds, and also correctly ruled that the 71 Spooner Road lot was an invalid lot because it had been created by LLC's division of 81 Spooner Road, pursuant to an endorsed ANR plan, which consequently rendered the property at 81 Spooner Road nonconforming with local zoning. It follows that the Land Court's judgments must be affirmed.[32]

*So ordered.*

---

[31]In *Alley,* a landowner assembled a new conforming lot by splitting off parts of two existing, adjoining (and theretofore conforming) lots; in doing so, however, the landowner rendered the original two lots nonconforming. A local building inspector refused to issue a building permit for the new lot. The Supreme Judicial Court ruled the permit was rightly denied. *Id.* at 6-7.

[32]The judge also made the following observation:

> "71 Spooner Road could be made conforming by the removal of all interior finish from the third floor of . . . 81 Spooner Road. A building permit may be issued to 71 Spooner Road provided such a condition is satisfied."

This observation has no binding effect on the homeowners who were not a party to this action.