NOTICE:   Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.   Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.   See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1024
22-P-1026

RICHARD SCOTT & others[1]

vs.

PLANNING BOARD OF LAKEVILLE & others[2]
(and a companion case[3]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Rhino Capital Advisors, LLC (Rhino),

obtained a special permit and site plan approval (the permits)

from the town of Lakeville's planning board (board) for

construction of a 402,500 square foot warehouse and 130 loading

docks to operate twenty-four hours a day, seven days a week, on

property that formerly housed the Lakeville State Hospital (the

project).   The site is located partially in a business zoning

district and partly in a residential zoning district; neither

allows warehouses.   Two residential neighbor groups appealed

---

[1] Janet Scott, Susan Aukstikalnis, and Norman Bossio.

[2] Derek Maksy and Rhino Capital Advisors, LLC.

[3] John Jenkins, Heather Bodwell, John Ayers, Ryan Eaton, Stephanie Eaton, and Andrew Virostek vs. Planning Board of Lakeville, Tyler Murphy, and Rhino Capital Advisors, LLC.

from the board's decision to the Land Court and, following a view, a judge granted summary judgment to the neighbor groups and annulled the permits.[4]  Rhino appeals contending that the project qualifies for the permits because the property at issue is within the town's "Development Opportunities Overlay District" (DO District).  However, the town failed to amend the zoning map to show the DO District, and did not otherwise delineate the boundaries of the DO District or designate specific parcels to be included.  With this in mind and based on the plain language of the DO District, we reject Rhino's theory that the DO District applies to all of the property in the town.  Accordingly, we affirm the judgments.

Background.  Because both parties parse the wording of the DO District section of the bylaw and seek to apply different rules of construction, we set forth the provisions in some detail.  The DO District was adopted at a town meeting on June 4, 2012, adding section 7.9 to the town's zoning bylaw (bylaw).  On the same evening, and immediately prior to adopting the DO District, the town voted to accept the provisions of G. L. c. 43D and approved the filing of an application with the

_____

[4] The two appeals of the board's decision were considered together in the Land Court, and Rhino's appeals of those decisions were heard together in this court.

2

"Interagency Permitting Board" for designation of the Lakeville

State Hospital site as a priority development site.[5]

Pursuant to Section 7.9.1 of the bylaw,

> "The purpose of the Development Opportunity (DO) District
> is to authorize the innovative use of certain portions of a
> defined overlay district for activities appropriate to
> large land areas by the issuance of a special permit with
> safeguards and conditions to prevent detrimental effects
> and impact upon neighboring properties, natural resources
> and upon the Town of Lakeville as a whole.  The intent of
> the DO District is to provide opportunities for economic
> development expansion in a planned multi-use district while
> protecting the natural resources of the Town.  The
> Development Opportunities District is an overlay district
> superimposed over those underlying districts as shown on
> the zoning map of the Town of Lakeville."  (emphasis
> added).

Section 7.9.3.2 provides that no DO District "special permit

shall be granted unless the total land area, including streets

of the subject property consists of twenty-five or more acres."

Uses allowed by special permit in the DO District include

manufacturing and industrial, high technology, warehouses,

wholesale distribution centers, public service facilities,

transportation terminal, office and medical buildings, schools,

retail sales facilities, theaters, restaurants and other places

of public assembly.

---

[5] In addition to expedited permitting, under c. 43D, priority
development sites are eligible for priority consideration for
community development action grants, public works economic
development grants, quasi-public financing and training
programs, brownfields remediation assistance, enhanced
marketing, and technical assistance from the regional planning
council.  See G. L. c. 43D, § 12.

It is undisputed that the DO District is not shown on the zoning map and that the zoning map was not amended to show the boundaries of the DO District. Indeed, there is no reference to the DO District on the zoning map. The board concluded that the DO District "is a designated overlay district in the Lakeville Zoning Bylaw that applies to land within the Town consisting of a total land area, including streets, of twenty-five or more acres." The judge concluded however, that although the town properly enacted the DO District, it "is not effective with respect to any particular land unless and until a zoning map amendment, or other zoning enactment designating land to be included in the district, is adopted." Accordingly, he annulled the permits.

Discussion. 1. Standing. The judge concluded that almost all of the parties in the two neighbor groups have standing either because they are parties in interests and Rhino did not refute their standing, or because they affirmatively demonstrated their standing.[6] On appeal, none of the parties makes an argument as to standing and we discern no reason to disturb the judge's detailed findings and conclusion on that issue. See Davenport v. Planning Bd. of Dennis, 76 Mass. App.

_____

[6] The judge concluded that John Jenkins, who lives over four miles from the site, did not have standing and Rhino's motion for summary judgment as to him was allowed. Jenkins does not challenge this determination on appeal.

4

Ct. 221, 224 n.10 (2010).  See also 81 Spooner Rd., LLC v.

Zoning Bd. of Appeals of Brookline, 78 Mass. App. Ct. 233, 242

n. 22 (2010) (that one plaintiff was aggrieved person is

"sufficient to permit an appeal from the board's decision").

2.  Interpretation of the DO District.  "We review

interpretations of zoning bylaws de novo and according to

traditional rules of statutory construction."  Pinecroft Dev.,

Inc. v. Zoning Bd. of Appeals of West Boylston, 101 Mass App.

Ct. 122, 128 (2022).  While we generally defer to a local

board's reasonable interpretation of its own zoning bylaw, an

"incorrect interpretation of a statute . . . is not entitled to

deference."  Shirley Wayside Ltd. Partnership v. Board of

Appeals of Shirley, 461 Mass. 469, 475 (2012).  Similarly, we

give no deference to unreasonable interpretations of a bylaw.

See Perry v. Zoning Bd. of Appeals of Hull, 100 Mass. App. Ct.

19, 23 (2021).  "An interpretation of a bylaw provision is

unreasonable if it is inconsistent with that provision's purpose

or the bylaw as a whole."  Pinecroft Dev., Inc., supra.

We note that "[t]he construction of a statute which leads

to a determination that a piece of legislation is ineffective

will not be adopted if the statutory language 'is fairly

susceptible to a construction that would lead to a logical and

sensible result.'"  KCI Mgt., Inc . v. Board of Appeal of

Boston, 54 Mass. App. Ct. 254, 259-260 (2002), quoting Adamowicz

v. Ipswich, 395 Mass. 757, 760 (1985).  Here, the town's adoption of the DO District was effective to create the DO District, but the town did not take the necessary steps to define the limits of the DO District on the zoning map or otherwise assign any specific property to it.  See Cerel v. Natick, 2 Mass. App. Ct. 822 (1974) (where town adopted planned cluster development district without amending zoning map, town "simply intended to create a new type of district to which land could subsequently be assigned by amendment of the zoning map . . . pursuant to a separate vote of the town meeting").

Notwithstanding, Rhino contends that the bylaw is ambiguous because the clause in the purpose section of the DO District provisions, "superimposed over those underlying districts as shown on the zoning map," could be interpreted either to mean that the DO District is superimposed over all of the underlying districts shown on the zoning map or, as the judge found, over only the underlying districts shown on the zoning map as included in the DO District.  "When ascertaining ambiguity, 'we do not read words in isolation and out of context'" (citation omitted).  Matter of Leo Kahn Revocable Trust, 102 Mass. App. Ct. 38, 42 (2022).  "It is axiomatic that we are to 'look to the language of the entire [bylaw], not just [textual snippets], and attempt to interpret all of its terms harmoniously to effectuate the intent of the [town meeting]'" (quotation omitted).

6

Commonwealth v. Graziano, 96 Mass. App. Ct. 601, 605 (2019), quoting Commonwealth v. Mogelenski, 466 Mass. 627, 641 (2013).

Rhino contends that reading the provisions of the DO District together compels the conclusion that the DO District was intended to "create a townwide overlay district superimposed over all underlying districts shown on the Zoning Map." Rhino asserts that the only criterion is a "dimensional requirement" that the lot consist of at least twenty-five acres. We conclude, to the contrary, that when the bylaw's "language is read in context of the remainder of [the DO District] -- its meaning is reasonably plain:" the limits of the DO District were to be reflected on the zoning map. Commonwealth v. Kiago, 101 Mass. App. Ct. 717, 736 (2022).

Several aspects of the DO District's purpose clause support our conclusion that the extent of the DO District would be defined and that the areas of the town that would be part of the DO District would be designated on the zoning map.[7] For example, the first sentence of the purpose clause provides that specified DO District uses would be allowed in "certain portions of a

_____

[7] We note that in addition to the purpose clause, one of the criteria for granting a special permit in the DO District is that "the activities are consistent with the comprehensive plans of the Planning Board for the general development of the Town of Lakeville as a whole as well as for the DO District." This is yet another instance in the bylaw where the DO District is described as something other than the entire town.

7

<u>defined</u> overlay district" (emphasis added).  Calling it a "defined overlay district" is inconsistent with the suggestion that the town intended that the DO District would overlay the entire town and is consistent with the intention that the extent of the overlay district would be delineated or precisely stated. And, even if we were to accept that "certain portions" refers to the twenty-five acres parcel requirement, there is a glaring absence of anything in the bylaw that defines the extent of the DO District, and nothing that even suggests that it was intended to apply to all of the land in the town.

The purpose clause also refers to the DO District as a "<u>planned multi-use district</u>" (emphasis added).  Again, the use of the terms "defined" and "planned" belie any suggestion that the town intended to create a roaming district wherever in the town twenty-five acres could be cobbled together.

Finally, the purpose clause provides that the DO District "is an overlay district <u>superimposed over those underlying districts as shown on the zoning map</u> of the Town of Lakeville" (emphasis added).  While Rhino suggests that the judge placed too much emphasis on the terms "those" and "as shown," at bottom, Rhino wants us to substitute "all" for "those" and delete "as" from "as shown."  Ambiguity is not created because a party wishes different words were used.  See <u>Suffolk Constr. Co</u>. v. <u>Lanco Scaffolding Co</u>., 47 Mass App. Ct. 726, 729 (1999)

(ambiguity not created because parties assign different interpretations to language). We decline to rewrite the bylaw. Rather, read in conjunction with the rest of the purpose clause, the intent of the DO District was to create a defined, planned, multi-use district that would be shown on the local zoning map. There is no ambiguity.

Our conclusion is further buttressed by examination of the other overlay districts contained in the bylaw's section 7.0, entitled "special regulations." Only the flood plain overlay district and the water resource protection district apply to the entire town. Although the flood plain district is not shown on the zoning map, its provisions specifically provide that "[t]he Floodplain District is established as an overlay district to all other districts" (emphasis added). Similarly, the water resource protection district (section 7.2), establishes regulations that "apply throughout the Town." In sharp contrast, the planned special purpose district is designated as bounded by several specific streets, and is shown on the zoning map.[8] The mixed use development district portion of the bylaw

---

[8] In addition to delineating the boundaries of the planned special purpose ("PSP") district, the bylaw provides that "[t]he PSP district is an overlay district superimposed over the underlying district. This section shall only apply to the following uses on parcels of greater than twenty-five acres." "The purpose of the Planned Special Purpose District is to encourage and to authorize the mixed use development of large land areas by means of an association of a variety of building

specifically sets forth the precise parcels on Assessors' Maps that are included in the district, and is shown on the zoning map as consisting of a very small portion of the town. The smart growth overlay districts "are overlay districts consisting of the land, respectively shown on the Zoning Map" and a second map "on file with the Town Clerk," and also specifically defines the districts with word descriptions. It is clear that when the town has chosen to facilitate development by special zoning, it has defined the areas to be included. In the absence of explicit language, it would be inconsistent with the zoning bylaw as a whole to assume that the DO District applies to all of the land in Lakeville.

It is apparent that the board believed that "[r]edevelopment of the site will meet a socially and economically desirable need by removing a blighted/abandoned development and creating economic development, job creation, . . . expanding the commercial tax base, . . ." and abating,

---

types and uses which are subordinate and mutually related to an identified authorized principal activity, with conditions and safeguards to prevent detrimental effects and impacts upon neighboring land uses and upon the Town of Lakeville generally." Permitted uses include cranberry culture and related uses, hotel and motel facilities, medical facilities, municipal facilities, museum, library or data storage facilities, office buildings, recreational facilities, and scientific research facilities related to other principal uses. Yet, despite that less burdensome uses are allowed as compared to the DO district, the actual area approved by the town meeting for inclusion in the PSP district is a small fraction of the town's total land mass.

10

remediating, and removing "existing hazardous materials on-site including structurally failing asbestos containing buildings and an uncapped unlined solid waste disposal area."  While this may be true and the redevelopment of the site may achieve laudable goals and perhaps overlap with some of the goals of the DO District, the town has not designated the site as covered by the DO District, and we do not give deference to an unreasonable interpretation of the bylaw.[9,10,11]

Judgments affirmed.

By the Court (Blake,
Massing & Hand, JJ.[12]),

*Joseph F. Stanton*
Clerk

Entered:   November 29, 2023.

---

[9] Rhino tries to connect the adoption of c. 43D and approving the filing of an application for designation of the locus as a priority development site and the adoption of the DO District. They argue it is apparent from the town's adoption of both articles that the town intended that the locus "would immediately become an eligible parcel in a townwide overlay district."  We reject the argument; the specific designation of the locus as a priority development site has no bearing on whether the town intended the DO District to apply town wide.

[10] Because of the result we reach we need not consider whether the special permit and site plan approval were properly annulled because the DO District creates a "floating zone."

[11] The plaintiffs' request for attorney's fees and costs is denied.

[12] The panelists are listed in order of seniority.

11