SUPERIOR COURT 
 
 SALVATORE F. DIMASI vs. WILLIAM F. GALVIN, in his official capacity as SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS

 
 Docket:
 2084CV00090
 
 
 Dates:
 July 2, 2020
 
 
 Present:
 Robert B. Gordo Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

             The plaintiff, Salvatore DiMasi ("DiMasi"), filed this action under G.L. c. 30A, § 14 and G.L. c. 249, § 4. In it, DiMasi challenges the validity of an official action taken by the defendant, William F. Galvin, in his official capacity as Secretary of the Commonwealth of Massachusetts (the "Secretary"), disqualifying DiMasi from registering as an executive or legislative agent[1] until June of 2021. DiMasi argues that the Secretary's automatic disqualification of him under G.L. c. 3, § 45(m) constituted an error of law, and violated his constitutional right to due process. DiMasi asks the Court to reverse the Secretary's decision, and award him costs and attorney's fees under 42 U.S.C. § 1983.[2] Now before the Court are cross-motions for judgment on the pleadings filed by DiMasi and the Secretary pursuant to Mass. R. Civ. P. 12(c). For the reasons that follow, DiMasi's motion shall be ALLOWED in part and DENIED in part, and the Secretary's motion shall be ALLOWED in part and DENIED in part.
BACKGROUND
---------------------------
[1]The General Laws use the terms "executive agent" and "legislative agent" to refer to lobbyists. See G.L. c. 3, § 39. For ease of reference, the Court will use the term "lobbyist" throughout this opinion.
[2] DiMasi's Complaint also asserts a request for declaratory relief pursuant to G.L. c. 231A. The nature of this request is discussed infra at n.10.
                                                            -1-
A.        History of G.L. c. 3, & 45(m) 
            On November 7, 2008, then Massachusetts Governor Deval Patrick issued an executive order establishing the Governor's Task Force on Public Integrity (the "Task Force"). The order opined that "the Commonwealth's existing laws pertaining to ethics and lobbying were enacted separately, at different times, and would benefit from a comprehensive reexamination that assesses the adequacy of the existing regulatory frameworks, the sufficiency of the current enforcement mechanisms and penalties, and whether gaps exist between the separate systems that could be closed through greater coordination." See Executive Order No. 506, 1118 Mass. Register 1 (November 28, 2008). The order directed the Task Force to "examine the existing legal and regulatory frameworks governing ethics and lobbying, and make recommendations concerning any need for amendments to the current laws, regulations, investigative and enforcement mechanisms, and penalties." Id.
            On January 6, 2009, the Task Force issued its Report and Recommendations (the "Report"). In the Report, the Task Force proposed modifications "to the rulemaking, investigating, and enforcement authority" of the State Ethics Commission, the Secretary of the Commonwealth, and the Massachusetts Attorney General. Id. at 4. The proposed changes included, inter alia, "enhancements" to the Secretary's powers under General Laws chapter 3, § 45. See Report, Appendix A at 2-4. At the time, Section 45 provided that:
"The state secretary may, upon cause shown therefor, disqualify a person from acting as an executive or legislative agent. A person against whom proceedings for disqualification are brought shall be allowed a public hearing before the secretary or his designee. Such hearings shall be subject to the provisions of chapter thirty A. No person who has been so disqualified shall be employed as an executive or legislative agent until the termination of the third regular session of the general court after such disqualification."
                                                            -2-
The Task Force proposed legislation striking out the foregoing language, and replacing it with provisions authorizing the Secretary to initiate a confidential, preliminary inquiry into any alleged violation of G.L. c. 3, §§ 39 through 50.[3] See Report, Appendix C at 4. If the preliminary inquiry resulted in a finding of reasonable cause to believe that a violation of G.L. c. 3, §§ 39 through 50 occurred, the proposed legislation authorized the Secretary to conduct an adjudicatory proceeding and issue orders requiring the violator to cease and desist such violation, suspend or revoke the violator's lobbying license, and/or require the violator to pay a civil penalty. Id. at 5-6.
            In June of 2009, the Massachusetts Legislature enacted An Act to Improve the Laws  Related to Campaign Finance, Ethics, and Lobbying, St. 2009, c. 28 (the "Act"). Pursuant to the Act, the Legislature adopted the Task Force's proposed changes to Section 45 as G.L. c. 3, §§ 45(a)-(k),[4] and added two further subsections—G.L. c. 3, §§ 45(1) and (m). Section 45(1) imposes penalties on "[a]ny person who violates the confidentiality" of a preliminary inquiry brought under Section 45(a). Section 45(m), the subsection at the heart of the parties' dispute in the case at bar, provides that "[t]he state secretary shall automatically disqualify any person convicted of a felony in violation of chapter 3, chapter 55, or chapter 268A from acting or registering as an executive or legislative agent for a period of 10 years from the date of conviction."
B.        DiMasi's Disqualification Under G.L. c. 3, 4 45
---------------------------
[3] General Laws chapter 3, §§ 39-50 are statutes specifically aimed at regulating the act of lobbying in Massachusetts.
[4] The language of G.L. c. 3, §§ 45(a)-(k) closely tracks the language of the Task Force's proposed legislation. There are, however, some relatively minor substantive differences. These include the deletion of proposed provisions expressly authorizing the Secretary to share records related to a confidential preliminary inquiry under Section 45(a) with the Inspector General, the State Ethics Commission, and the Director of the Office of Campaign and Political Finance Information, and the deletion of a proposed provision granting all witnesses in an adjudicatory proceeding initiated under Section 45(c) the right to be represented by counsel.
                                                            -3-
            DiMasi served as the Speaker of the Massachusetts House of Representatives from September 28, 2004 through January 27, 2009. On June 15, 2011, based on conduct he engaged in while serving as Speaker, DiMasi was convicted of one count of conspiracy in violation of 18 U.S.C. § 371, two counts of honest-services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346, three counts of honest-services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, and one count of extortion under color of official right in violation of 18 U.S.C. § 1951. The United States District Court for the District of Massachusetts sentenced DiMasi to eight years in federal prison, followed by two years of supervised release. In November, 2016, DiMasi was granted early release from prison in consideration of his demonstrated medical condition.
            On March 22, 2019, DiMasi applied to the Secretary to register as a lobbyist.[5] On March 26, 2019, the Secretary rejected DiMasi's application and issued him a notice explaining that, in accordance with G.L. c. 3, § 45(m), he was disqualified from acting as a lobbyist for ten years from the date of his federal convictions. On April 22, 2019, DiMasi submitted a notice of appeal to the Chief Legal Counsel of the Secretary's Lobbyist Division, and requested a hearing.
            During a prehearing conference held on June 13, 2019, the Secretary reaffirmed its position that DiMasi was disqualified from acting as a lobbyist under Section 45(m), and argued that it also intended to disqualify DiMasi from registering as a lobbyist pursuant to G.L. c. 3, § 45(j).[6] On June 25, 2019, the Secretary filed a notice pursuant to G.L. c. 3, § 45(a).[7] The notice
---------------------------
[5] General Laws c. 3, § 41 requires "[e]ach legislative agent, executive agent and lobbyist entity [to] file an annual registration statement with the state secretary. . . . Upon registration, the state secretary shall issue to each legislative agent and executive agent a license which shall entitle the holder to act as a legislative agent and executive agent for a client that has filed a registration statement pursuant to [G.L. c. 3, § 41]."
[6] Section 45(j) authorizes the Secretary to suspend or revoke the license and registration of a person found in violation of G.L. c. 3, §§ 39-50 following an adjudicatory proceeding initiated under G.L. c. 3, § 45(c).
[7]General Laws c. 3, § 45(a) permits the Secretary to initiate a preliminary inquiry into any alleged violation of G.L. c. 3, §§ 39-50 "[u]pon receipt of a sworn complaint . . . or upon evidence which is deemed sufficient by the state secretary . . . ." Section 45(a) further requires the Secretary to "notify any person who is the subject of the preliminary inquiry of the existence of such inquiry and the general nature of the alleged violation within 30 days of the commencement of the inquiry."
                                                            -4-
charged that, in 2005 and 2006, DiMasi had engaged in conduct that violated G.L. c. 3, §§ 41, 42, and 43. Based on these allegations, the Secretary moved to consolidate DiMasi's appeal with an adjudicatory proceeding pursuant to G.L. c. 3, § 45(c).[8] DiMasi thereupon filed a Motion to Strike the Secretary's alternative theory of disqualification. In this motion, DiMasi argued that the Secretary had failed to comply with statutory prerequisites for an adjudicatory hearing under G.L. c. 3, § 45, and that such a proceeding could not "provide ad hoc justification for the automatic disqualification of Mr. DiMasi that ha[d] already been imposed."
            On November 26, 2019, the Presiding Officer heard argument on DiMasi's appeal and his Motion to Strike the Secretary's alternate theory of disqualification. At this hearing, DiMasi argued that the automatic disqualification of G.L. c. 3, § 45(m) should be read narrowly to disqualify only persons convicted of crimes under the state law provisions expressly enumerated therein.
            On December 26, 2019, the Presiding Officer issued a decision upholding the Secretary's automatic disqualification of DiMasi under G.L. c. 3, § 45(m). The Presiding Officer rejected DiMasi's argument that the statute should be construed narrowly, and held that the language of Section 45(m) should be read broadly to permit the Secretary to disqualify a person from registering as a lobbyist if such person has been convicted under a federal statute that "closely aligns" with the language of the state law provisions recited in Section 45(m). Finding that federal honest-services crimes "closely align with the language of M.G.L. c. 268A, § 2," the
---------------------------
[8] An adjudicatory proceeding may be initiated under Section 45(c) "[i]f a preliminary inquiry indicates reasonable cause for belief that there has been a violation of sections 39 to 50 . . . ." G.L. c. 3, § 45(c).
                                                            -5-
Presiding Officer concluded that "the conditions for automatic disqualification under Section 45(m) [had] been satisfied" with respect to DiMasi.
            The Presiding Officer issued a decision on DiMasi's Motion to Strike the same day. In that decision, the Presiding Officer stated that the Secretary "appear[ed] to concede" that it had not observed applicable statutory prerequisites, and had failed to provide authority in support of its position that a preliminary inquiry was unnecessary in view of DiMasi's well-documented federal convictions. The Presiding Officer thus allowed DiMasi's motion, but granted the Secretary leave to re-file.[9]
DISCUSSION
            The parties' respective cross-motions for judgment on the pleadings ask the Court to rule on: (1) DiMasi's request for judicial review of the Secretary's disqualification decision, and (2) DiMasi's claim that the Secretary's conduct violated his constitutional due process rights under 42 U.S.C. § 1983.[10] The Court will address these matters in turn.
            I.          The Secretary's Decision 
                        A. Standard of Review 
            DiMasi's Complaint asks the Court to reverse the Secretary's decision under both the Massachusetts Administrative Procedures Act, G.L. c. 30A, and the Commonwealth's certiorari
---------------------------
[9]Although the decision did not expressly so state, the Secretary's leave to re-file is presumably contingent upon its compliance with applicable statutory prerequisites.
[10] DiMasi's Motion for Judgment on the Pleadings additionally asks the Court to issue a declaration pursuant to the Declaratory Judgment Act, G.L. c. 231A, stating that the Secretary's alternate theory of disqualification was invalid and unenforceable. The Secretary's opposition correctly argues that DiMasi's request for declaratory relief does not present an "actual controversy" ripe for review under Chapter 231A, in view of the Presiding Officer's decision to allow DiMasi's Motion to Strike the Secretary's alternate theory. DiMasi has, accordingly, filed a reply brief asking the Court to reserve ruling on his declaratory judgment claims until after it has issued a decision on the Secretary's interpretation of Section 45(m). If, following the issuance of the instant decision, the Secretary revives its attempt to disqualify DiMasi from registering as a lobbyist pursuant to its authority under G.L. c. 3, § 45(j), DiMasi's claim for declaratory relief would at that point ripen. How the Secretary would overcome the obvious hurdles posed by the statutes of limitation applicable to the misconduct DiMasi purportedly engaged in some 15 years ago is unclear. In all events, the undersigned would retain jurisdiction of this case in order to address such issues should the need arise.
                                                            -6-
statute, G.L. c. 249, § 4. Inasmuch as DiMasi argues only that the Secretary's decision is based on an error of law, the Court need not consider which of the two statutes provides the appropriate avenue of review. See G.L. c. 30A, § 14(7) (granting the court the authority to remand, set aside, or modify an agency's decision "if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . [b]ased upon an error of law"); Essex  Regional Ret. Bd. v. Swallow, 481 Mass. 241, 245 (2019) (review under G.L. c. 249, § 4 only permits the court to correct "a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff') (internal quotation marks omitted). The Court discerns no material difference in the nature of its review. See Aqua King Fishery v. Conservation Comm'n of Provincetown, 91 Mass. App. Ct. 712, 713 n.3 (2017) ("[T]he standard of appellate review under G.L. c. 30A, § 14, and G.L. c. 249, § 4, is essentially the same.").
            To resolve this case under either statute, the Court must determine whether G.L. c. 3, § 45(m) permits the Secretary to disqualify a person from registering as a lobbyist if that person has been convicted within the past ten years of a federal crime that "closely aligns" with offenses specified within chapters 3, 55 and 268A of the General Laws. Since "[t]his question does not involve any gaps in the statute to which the [Secretary] needs to apply its specialized knowledge
[t]he interpretive question is purely legal[.]" Tirado v. Board of Appeal on Motor Vehicle  Liab. & Bonds, 472 Mass. 333, 336 (2015). Accordingly, the undersigned will "review it de novo because [t]he duty of statutory interpretation rests ultimately with the courts.'" Id. at 337 (quoting Souza v. Registrar of Motor Vehicles, 462 Mass. 227, 229-30 (2012)).
                        B. Analysis 
            General Laws c. 3, § 45(m) provides that "[t]he state secretary shall automatically disqualify any person convicted of a felony in violation of chapter 3, chapter 55, or chapter 268A
                                                            -7-
from acting or registering as an executive or legislative agent for a period of 10 years from the date of conviction." DiMasi argues that Section 45(m) should be construed narrowly to allow only the automatic disqualification of persons convicted of crimes specifically identified in chapters 3, 55 and 268A of the General Laws. The Secretary counters that Section 45(m) should be construed broadly to permit disqualification of a person convicted of any felony (state or federal) for conduct proscribed by chapters 3, 55 and/or 268A. As explained more fully below, the Court agrees with DiMasi and finds the Secretary's arguments unpersuasive.
            "[A] fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning." Boss v. Leverett, 484 Mass. 553, 557 (2020) (quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001)). "If the language is clear and unambiguous, [the statute] must be interpreted as written." Id. In this regard, the Court's "principal objective is to ascertain and effectuate the intent of the Legislature in a way that is consonant with sound reason and common sense." Commonwealth v. Wassilie, 482 Mass. 562, 573 (2019).
            In this case, the Secretary's mandate under the plain language of G.L. c. 3, § 45(m) is clear. He shall automatically disqualify a person convicted of a crime under chapters 3, 55 and/or 268A from acting or registering as a lobbyist for ten years from the date of conviction. When something must be done "automatically," it must be done "with little or no direct human control" and "without conscious thought or intent." See Black's Law Dictionary (11th ed. 2019) (defining "automatic"). Thus, by its clear terms, Section 45(m) does not grant the Secretary discretion to consider whether to disqualify someone who has not been convicted of an offense under chapters 3, 55 and/or 268A because, in the Secretary's view, the person was convicted of a federal crime that "closely aligns" with the prohibitions of those chapters. Cf. MacLean v. State
                                                            -8-
Bd. of Ret., 432 Mass. 339, 351-52 (2000) (statute requiring automatic forfeiture of pension benefits upon conviction did "not allow the [retirement] board any discretion as to the revocation of pension benefits"); Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 273 (1992) (holding that the Registrar "ha[d] no discretion on whether to suspend" a driver's license under statute that required suspension to "follow[] automatically from a conviction on an underlying drug offense . . . ."); State v. Bodyke, 933 N.E.2d 753, 759-60 (Ohio 2016) (finding that judges no longer had discretion to determine which classification level best fit individual sex offenders where new legislation made classification level automatic based on the offense). The Secretary's only task under Section 45(m) is to look at a person's criminal record and determine whether he or she has been convicted under chapters 3, 55 or 268A within the past ten years. If yes, then disqualification from lobbying shall automatically follow. For this reason, the Secretary's determination that DiMasi—who was not convicted of any of the referenced state law offenses—must nevertheless be disqualified because (in the Secretary's judgment) his federal convictions "closely align" with crimes set forth in G.L. c. 268A, § 2 violated the clear and unambiguous language of Section 45(m).
            To defend its departure from the statutory text, the Secretary advances three arguments. First, the Secretary insists that a broad interpretation of Section 45(m) is required to comply with principles of statutory construction that prohibit the Court from interpreting a statute "so as to render it or any portion of it meaningless." Adamowicz v. Ipswich, 395 Mass. 757, 759 (1985). More specifically, the Secretary contends that G.L. c. 55 does not identify any offenses that are felonies,[11] and, therefore, the narrow construction of Section 45(m) advocated by DiMasi renders
---------------------------
[11] "The distinction between felony and misdemeanor offenses is established by statute: crimes punishable by confinement in a State prison are felonies; all other crimes are misdemeanors." Commonwealth v. Hill, 57 Mass. App. Ct. 240, 248 (2003) (citing G.L. c. 274, § 1). Where a statute does not expressly state whether a given crime is punishable by confinement in state prison (as opposed to a house of correction), the court looks to the term of confinement the statute prescribes. See Commonwealth v. Zawatsky, 41 Mass. App. Ct. 392, 395 (1996). Because "a sentence to a house of correction may not exceed two and one-half years," statutes that prescribe terms of incarceration in excess of two and a half years are crimes necessarily punishable by confinement in state prison, and are thus felonies. Id. None of the offenses set forth in chapter 55 are punishable by confinement in state prison or in excess of two and one-half years. As such, the crimes referenced therein are all misdemeanors.
                                                            -9-
use of the word "felony" meaningless with respect to chapter 55. Stated differently, the Secretary's position is that the only way to give meaning to the term "felony" in the context of a disqualifying crime under chapter 55 is to read Section 45(m) as triggered by the conviction of any felony (under the law of any state or federal jurisdiction) if the conduct underlying same violates chapter 55. Although such a broad construction of Section 45(m) concededly preserves meaning for the term "felony," it produces an even more anomalous result of its own: viz., none of the crimes referenced in Chapter 55 itself would ever trigger disqualification. In other words, if automatic disqualification only flows from convictions of felonies set forth in chapters 3, 55 and 268A, and none of the offenses recited in chapter 55 are felonies, then no conviction under chapter 55 could ever be the predicate for automatic disqualification. The Secretary's interpretation thus reads more language out of Section 45(m) than the common-sense construction of the law urged by DiMasi. See Commonwealth v. Pagan, 445 Mass. 315, 319 (2005) (quoting Capone v. Zoning Bd. of Appeals of Fitchburg, 389 Mass. 617, 622 (1983)) ("Where the draftsmanship of a statute is faulty or lacks precision, it is [the court's] duty to give the statute a reasonable construction.").[12]
            The Secretary's contention, again driven by the desire to preserve meaning for the term "felony," that automatic disqualification under Section 45(m) should be deemed triggered where
---------------------------
[12] The Secretary's interpretation of Section 45(m) seems particularly ill advised when one recognizes that the language whose meaning the Secretary labors so mightily to preserve in this case ("felony") appears to lie at the very margin of the statute's concerns. The Legislature surely gave little thought to whether the disqualifying crime under Section 45(m) happened to be a felony or a misdemeanor. Its unmistakable intent, rather, was to disqualify individuals seeking to register as lobbyists in Massachusetts for a period of ten years if they had been convicted of one or more of the crimes specified in the enumerated General Laws. Whether those referenced crimes were or were not punishable by more or less than 2 1/2 years' imprisonment does not appear to have been of material concern.
                                                            -10-
a person has been convicted of "conduct that violates" the enumerated statutes is likewise at odds with the plain language of Section 45(m). Section 45(m) references "convict[ions]" that are "in violation of specified statutes, and nowhere contains the word "conduct" at all. The manner of statutory construction thus urged by the Secretary is disfavored under settled canons. See Commonwealth v. Billingslea, 484 Mass. 606, 622 (2020) ("It is a well-established canon of construction that, where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning."); see also Commissioner of Corr. v. Superior Court Dept. of the Trial Court, 446 Mass. 123, 126 (2006) (the court may not "add words" to a statute "that the Legislature had an option to, but chose not to include"). If the language of Section 45(m) were interpreted to trigger automatic disqualification upon a conviction for "conduct that violates" chapters 3, 55 and/or 268A, it would expand the enumerated disqualification triggers from three specific categories of state law offense to literally countless violations of laws propagated by foreign jurisdictions. Further, instead of being mandatory ("shall") and "automatic," disqualification would turn on the Secretary's discretionary determination that a conviction under the law of the foreign jurisdiction is sufficiently "comparable to" or "aligned with" one of the enumerated statutes. Such vast expansions of the law are neither expressed in, nor contemplated by, the statute that the Legislature enacted here. See Fascione v. CNA Ins. Cos., 435 Mass. 88, 94 (2001) (declining to expand remedies available under statute where there was no "evidence that the Legislature desired such a result").
            To preserve meaning for the term "felony" under the canon of construction relied upon by the Secretary would require the Court to engage in a substantial rewrite of the statute, and to do so by modifying the text of the law in its core application. If the only way to salvage meaning for the term "felony" is to redraft the rest of the statute entirely, adding words and
                                                            -11-
concepts to the law that were never adopted by the Legislature, then what the Secretary proposes is to honor one canon of construction by doing violence to another. This is an invitation the Court must decline. Compare Adamowicz, 395 Mass. at 759 (requiring a statute to be interpreted so that no portion thereof is rendered meaningless) with General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999) (court will not "read into [a] statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or set purpose").
            The Secretary next argues that a broader interpretation of Section 45(m) is more consistent with the Act's legislative purpose. See 81 Spooner Rd. LLC v. Brookline, 452 Mass. 109, 113 (2008) (quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934)) ("A statute must be construed 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."). In support, the Secretary maintains that, through the 2009 revisions to Section 45(m), the Legislature sought to strengthen the Secretary's authority to regulate lobbyists and thereby reduce the risk of corruption in the lawmaking process. The Secretary contends that the narrow construction of Section 45(m) advocated by DiMasi offends this salutary purpose. The Court does not agree.
            Although the 2009 revisions to Section 45 did strengthen the Secretary's authority over lobbyists in some respects (for example, by empowering the Secretary to issue subpoenas and impose fines), nothing in the statute's history suggests that the Legislature intended the Secretary's authority over lobbyists to be unfettered or without limit. Quite the contrary. The Legislature that enacted Section 45(m) in 2009 modified a version of the law that had previously
                                                            -12-
afforded the Secretary authority to treat a broad and unspecified range of offenses (including crimes under both federal law and the law of other states) as the "cause" triggers for disqualification from lobbying. Although the passage of Section 45(m) granted the Secretary new authority to disqualify a prospective lobbyist from registering for a license in the first place, it placed clear limitations on that authority by particularizing the triggers for disqualification (three referenced state statutes) and making such disqualification automatic rather than discretionary. This is an intended balance that the Secretary's expansive interpretation of Section 45(m) would undeniably disturb.
            If, as the Secretary contends, the impetus for the 2009 amendments to Section 45 was the fact that DiMasi and other elected officials were then subjects of federal investigation, the Legislature's failure to enumerate any federal statutes as triggers for automatic disqualification is all the more telling. Time and again, the Legislature has shown that it knows how to provide for a broader range of consequential triggers when it intends to do so. See, e.g., G.L. c. 6, § 178C (defining a "sex offense" as any violation of Massachusetts law enumerated as a sex offense "or a like violation of the laws of another state, the United States or a military, territorial or Indian tribal authority"); G.L. c. 90, § 24(0(1) (operator's license of a person under 21 years old may be suspended for three years upon refusal to submit to a chemical test if he has previously been convicted of one the offenses enumerated in the statute "or a like violation by a court of any other jurisdiction"); G.L. c. 279, § 25(b) (habitual offender must have been convicted twice previously of one of the offenses enumerated in the statute or "of a like violation of the laws of another state, the United States or a military, territorial or Indian tribal authority"). See also State Bd. of Ret. v. Bulger, 446 Mass. 169, 179-80 (2006) (holding that federal convictions could trigger G.L. c. 32, § 15(4), which does not enumerate any specific crimes, but requires public
                                                            -13-
employees to forfeit pension "after final conviction of a criminal offense involving violation of the laws applicable to his office or position").
            The Supreme Judicial Court has explicitly recognized the significance of the Legislature's failure to reference a federal conviction to trigger legal consequence when presented with a question closely analogous to the issue sub judice. In Collatos v. Boston Ret.  Bd., 396 Mass. 684, 687-88 (1986), the Court held that a statute requiring public employees who were convicted of enumerated state laws to forfeit their pension benefits did not apply to a public employee who had been convicted of a similar crime under federal law. The Court reasoned that "[t]he Legislature well knows how to use a Federal conviction to trigger a legal consequence . . . and the lack of such language . . . is an indication that no such result was intended," and that "[e]ven if the Legislature did not foresee the possibility of a public employee who might have been convicted under one of the two enumerated Massachusetts statutes being convicted under an arguably equivalent Federal statute, it is not [the court's] function judicially to amend the statute to cover this eventuality." Id. The principle thus articulated in Collatos lights the path to reasonable statutory construction in the case at bar.
            The Secretary counters that the rationale of Collatos does not apply here because, unlike Section 45(m), the statute at issue in Collatos was penal in nature. See id. at 686 ("A statute
designed to enforce the law by punishing offenders, rather than simply by enforcing restitution to those damaged, is in the nature of a penal statute. . . . [and] must be construed strictly."). According to the Secretary, therefore, the ruling in Collatos was a product of the rule of lenity, and is inapposite to the construction of a regulatory statute like Section 45(m). The Court is not persuaded.
                                                            -14-
            Where "statutory language 'can plausibly be found to be ambiguous,' the rule of lenity requires the defendant to be given 'the benefit of the ambiguity.'" Commonwealth v. Carrion, 431 Mass. 44, 45-46 (2000) (quoting Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992)). "The rule of lenity does not require, however, that absent an ambiguity we construe a penal statute most favorably to a defendant." Id. at 46. Collatos expressly stated that the statute in question was "clear and unambiguous." 396 Mass. at 686. For this reason, and although cited by Collatos, the rule of lenity did not strictly control the case's holding, and does not bar application of the interpretive principle expounded therein to the statute at issue here. Indeed, the very same principle is regularly applied to penal and regulatory statutes alike. See, e.g., City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) ("We have long recognized that statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court.") (internal quotation marks omitted); Entergy Nuclear Generation Co v. Department of Envtl. Protection, 459 Mass. 319, 329 (2011) ("We will not create provisions the Legislature did not see fit to include . . . ."); Commonwealth v. Boe, 456 Mass. 337, 347-48 (2010) (it is improper for a court to read a provision into a statute that the Legislature omitted "under the guise of correcting a perceived inadequacy or injustice in a statutory scheme").
            Finally, the Secretary argues that a narrow construction of Section 45(m) produces an "absurd" result, insofar as it permits an individual to register as a lobbyist after conviction for conduct similar to the conduct proscribed by chapters 3, 55 and 268A based on no more than the fortuity of the venue of the individual's prosecution. See Bridgewater State Univ. Found. v. Board of Assessors of Bridgewater, 463 Mass. 154, 158 (2012) (quoting Attorney Gen. v. School  Comm. of Essex, 387 Mass. 326, 336 (1982)) ("[W]e will not adopt a literal construction of a
                                                            -15-
statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended to act reasonably."). The Court does not agree.
            First, the result of the narrow construction of Section 45(m) decried by the Secretary is no more absurd than the result of the more expansive construction it advocates. Once again, the broad reading of Section 45(m) urged by the Secretary would invest the Secretary with authority to construe which among scores of federal and non-Massachusetts crimes are sufficiently analogous to the prohibited conduct set forth in chapters 3, 55 and 268A when passing on lobbyist applications. One might fairly deride such a result as absurd, when the very purpose of this statute was to eliminate the Secretary's discretion to disqualify would-be lobbyists and replace such discretion with an automatic disqualification from lobbying if the applicant stood convicted of one of the specifically enumerated offenses.
            Second, the Legislature made the decision to specify particular statutes as triggers for automatic disqualification in the face of public comment and proposed legislation seeking to disqualify all types of felons from registering as lobbyists. See House Bill No. 3500, 186th Gen. Ct. (Mass. 2009). The legislation enacted as Section 45(m) thus reflects a middle ground between the law as it existed in 2009 (broadly allowing anyone convicted of crime to register as a lobbyist following his or her release from commitment), on the one hand, and permitting no one convicted of any felony to practice lobbying, on the other. The compromise struck thus provided for disqualification only in a limited range of cases involving particular violations of the public trust, but assured such disqualification by making it "automatic" rather than subject to case-by-case determination by the Secretary. To give effect to the legislative bargain evidently reached in Section 45(m) is to respect the law as passed, and is not a surrender to absurdity. See 
                                                            -16-
Alves's Case, 451 Mass. 171, 179-80 (2008) ("The Legislature is presumed to intend and understand all the consequences of its actions.").
            Finally, even if it is not automatic, there are alternate pathways to disqualifying an individual from serving as a lobbyist if that individual has been convicted of conduct under a federal statute that is similar to the conduct proscribed by chapters 3, 55 and/or 268A. For example, if a prospective lobbyist engages in conduct that results in federal charges or convictions, and his or her conduct also violates one or more provision of chapters 3, 55 or 268A, the Attorney General is empowered to prosecute the prospective lobbyist under state law. If such prosecution results in a conviction under chapters 3, 55 or 268A, the automatic disqualification provision of Section 45(m) is triggered. Similarly, if a person registers as a lobbyist who was recently convicted under a federal statute for conduct that is also prohibited by G.L. c. 3, §§ 39-50, the Secretary can initiate proceedings against the registrant pursuant to its authority under G.L. c. 3, §§ 45(a)-(i). If, following an adjudicatory proceeding, the Secretary concludes that a violation of G.L. c. 3, §§ 39-50 actually occurred, the Secretary can suspend or revoke the violator's lobbyist license and registration under G.L. c. 3, § 45(j). In fact, the Secretary in this case attempted to exercise its authority under G.L. c. 3, §§ 45(a)-(i) in a similar manner when it asserted an alternate basis for DiMasi's disqualification and requested an adjudicatory hearing. All of the above represent reasonable pathways for avoiding the undesirable results the Secretary denounces. There is, therefore, no policy-borne need to torture the text of Section 45(m) as the Secretary does in order to avoid such results.[13]
---------------------------
[13] The Secretary argues forcefully that, as a matter of public policy, it should not make a difference whether a prospective lobbyist was convicted of one of the state law crimes enumerated in Section 45(m) or a cognate crime in another jurisdiction. Section 45(m), it urges, should therefore be construed to give effect to such sound public policy. The argument is, to be sure, not without some appeal. But while there may well be good reason to have a statute of such breadth, particularly where matters of public integrity are concerned, that is simply not the law the Legislature enacted. If the Legislature desires such a law, it must go through the legislative process to amend G.L. c. 3, § 45. Indeed, there is reported precedent for the Legislature doing precisely that. See, e.g., Bulger, 446 Mass. at 179-80 (citing Gaffney v. Contributory Ret. Appeal Bd., 423 Mass. 1,4 (1996)) (recognizing that the Legislature enacted G.L. c. 32, § 15(4) in response to the court's decision in Collatos in order "to avoid having the precise form of the criminal enforcement action make a difference" as to whether a public employee who had engaged in misconduct was required to forfeit his pension).
                                                            -17-
            For the foregoing reasons, the Court finds that the Secretary's broad interpretation and application of Section 45(m) to disqualify DiMasi from lobbyist licensing and registration constituted an error of law. It may not stand. See G.L. c. 30A, § 14(7).
                        II. 42 U.S.C. 4 1983 
            DiMasi next claims that the Secretary's failure to provide him with a hearing before disqualifying him from "pursuing his chosen profession" under Section 45(m) denied him his constitutional right to due process of law, in violation of 42 U.S.C. § 1983. The Court does not agree.
            "The due process clause of the Fourteenth Amendment to the United States Constitution protects against deprivations of interests in 'life, liberty or property, without due process of law."' Hoffer v. Board of Registration in Med., 461 Mass. 451, 454 (2012). "'Procedural due process protections,' such as the right to a hearing, 'are only triggered when a liberty or property interest is at issue.'" Id. (quoting Hudson v. Commissioner of Corr., 431 Mass. 1, 7 (2000)). "Generally, an individual has a property interest in a benefit when the relevant law establishes certain eligibility criteria which, if met, entitle an individual to the benefit." Doyle v. Department of Indus. Accidents, 50 Mass. App. Ct. 42, 45-46 (2000); see also Welch v. Paicos, 66 F. Supp. 2d 138, 164-65 (D. Mass. 1999) ("We will . . . find a property interest in an applicant . . . only if the benefit, license, or program for which he applies is routinely granted to all applicants meeting objective or easily judged criteria."). By contrast, where "the relevant law provides the awarding agency or other entity discretion to decide whether to grant benefits to a potential recipient, such discretion negates any entitlement claim which the potential recipient may have had." Id. at 46;
                                                            -18-
see also Hoffer, 461 Mass. at 454-55 ("[T]he government's decision to deny a person a future benefit that is discretionary . . . or is conditioned on . . . complex or subjective criteria will not normally implicate procedural due process.") (internal quotation marks omitted).
            Under Massachusetts law, anyone may register as a lobbyist and, in turn, receive a lobbyist license, unless they have been "convicted of a felony in violation of chapter 3, chapter 55, or chapter 268A" of the General Laws, in which case G.L. c. 3, § 45(m) requires the Secretary to disqualify the prospective registrant automatically.[14] Accordingly, the Secretary's decision to disqualify here was neither discretionary nor based on "complex or subjective criteria." See Hoffer, 461 Mass. at 454-55. As a person who does not meet the standard for automatic disqualification under Section 45(m) and wishes to register as lobbyist in Massachusetts, therefore, DiMasi possesses "a legitimate claim of entitlement" to do so. See id. at 454; Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person must have . . . . a legitimate claim of entitlement to it."). Compare  Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 82-83 (1989) (applicant seeking license to deal used motor vehicles had no claim of entitlement to license where licensing process was wholly discretionary).
            Having found that DiMasi possessed a cognizable property interest for purposes of the due process clause of the Fourteenth Amendment, the Court turns next to the question of whether DiMasi was denied such process as was due. DiMasi is correct insofar as he contends that due process generally "requires that an individual must receive notice and a hearing prior to governmental deprivation of property." Leger v. Commissioner of Revenue, 421 Mass. 168, 172
---------------------------
[14] The language in G.L. c. 3, § 45(j) vesting the Secretary with discretion to "suspend[] for a specified period or revoke[e] the license and registration" of an individual deemed to have violated G.L. c. 3, §§ 39-50 necessarily refers to penalties the Secretary can impose on persons who already possess a lobbyist license and registration. This provision of the law is not implicated in the case at bar.
                                                            -19-
(1995). Even so, however, the U.S. Supreme Court "has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). "To determine what process is constitutionally due, we have generally balanced three distinct factors: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.'" Id. at 931 (quoting Matthews v. Eldridge, 424 U.S. 319, 335 (1976)). Applying the constitutional balance so framed, the Court concludes that DiMasi's due process claim fails.
            Although DiMasi's interest in making a living as a lobbyist is strong, the Commonwealth has an equally strong interest in promoting the integrity of government employees and the public's confidence in legislative decision-making. The automatic disqualification provision of Section 45(m) represents a reasonable measure to ensure that persons convicted of corrupt practices under state law cannot thereafter wield influence over public officials, and in so doing undermine the public's confidence in their government and its lawmaking. Cf. Gilbert, 520 U.S. at 932 (recognizing that states have a significant interest in "immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility").
            Setting aside what occurred in the instant case, the risk of erroneous deprivation under Section 45(m) is generally low, due to the fact that whether someone has been convicted of violating a particular statute is an independently verifiable question that can be answered "yes" or "no." For the same reason, providing a pre-deprivation hearing to individuals automatically
                                                            -20-
disqualified from registering as lobbyists under G.L. c. 3, § 45(m) would serve little purpose. On balance, the Court finds that DiMasi's post-deprivation right to appeal his automatic disqualification to the Secretary's Presiding Officer satisfied the Fourteenth Amendment's due process clause. DiMasi's constitutional claim under Section 1983, therefore, fails as a matter of law.
CONCLUSION AND ORDER
            For the foregoing reasons, DiMasi's Motion for Judgment on the Pleadings is ALLOWED as to his request to reverse the Secretary's disqualification decision, and DENIED  as to his due process claim under 42 U.S.C. § 1983. The Secretary's motion, in turn, is DENIED as to its request to affirm its underlying disqualification decision, and ALLOWED as to DiMasi's due process claim under 42 U.S.C. § 1983.
SO ORDERED.
@/s/Robert B. Gordo Justice of the Superior Court
@July 2, 2020
                                                            -21-
xxz